John R. TIDROW, Appellant,

v.

Avi ROTH, Appellee.

No. 05–04–01790–CV.

Court of Appeals of Texas, Dallas.

April 18, 2006.

---

David A. Carp, Herzog, Carp & Mc-Manus, Houston, for Appellant.

Mark A. Bukaty, Esq., Law Offices of Mark A. Bukaty, Dallas, for Appellee.

Before Justices FITZGERALD, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

John R. Tidrow appeals the trial court's judgment striking his answer and awarding Avi Roth actual and exemplary damages and attorney's fees. In two issues, Tidrow argues that the trial court failed to follow proper procedures before entering "death penalty" sanctions and Roth's causes of action are not sufficiently pleaded to support the default judgment. We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

John R. Tidrow (Tidrow) is the president of John R. Tidrow and Associates (JTA) and the former president of Millennium Armor Corporation (MAC), which manufactured armor for vests, vehicles, and aircraft. Avi Roth (Roth) was an investor in MAC. In April 2002, Roth loaned the company $75,000 in return for a convertible debenture.[1] The following month MAC's patented ballistic material failed a crucial test, and after an investigation, it became apparent the company's product was not marketable.

After failing to receive payment on the debenture, Roth filed suit against MAC, Tidrow, and JTA on July 7, 2003, asserting breach of contract and fraud.[2] Roth also sought a declaratory judgment that the debenture existed, that he complied with all terms of the agreement, and that the defendants breached the agreement. Roth's claims are based on a handwritten document signed by John R. Tidrow purporting to personally guarantee repayment to Roth the money he invested in MAC. The document, a copy of which is attached to Roth's petition, reads: "I John R. Tidrow will provide you with a payment date to return your cash invested in MAC. Also I would like a proposal to be drafted to pay you for your time and effort over and above the investment." At the bottom of this handwritten document, just beneath Tidrow's signature, it further states, "JTA will repay the cash invested in MAC."

Shortly after filing his original petition, Roth served Tidrow and JTA[3] with his first set of interrogatories, requests for disclosure, requests for production of documents, and requests for admission. Roth filed a motion to compel on October 29, 2003, claiming Tidrow and JTA refused to withdraw their objections or amend their responses to certain interrogatories and requests for production. On November 11, 2003, the parties signed a rule 11 agreement acceding to most of Roth's demands.[4] On December 22, 2003, Roth filed a motion to "enforce/compel," claiming Tidrow failed to produce all of the agreed-to documents. On January 16, 2004, the trial court signed an order to compel directing Tidrow and JTA, no later than fourteen days from the date of the order, to produce "[a]ll bank statements, checks or other financial records of Defendants from 2002 thru the present." Tidrow and JTA were also ordered to pay Roth $500 in attorney's fees. On February 2, 2004, Roth filed a motion for sanctions alleging Tidrow and JTA had not produced all of the documents ordered by the court or

---

1. A debenture is defined generally as "a debt secured only by the debtor's earning power, not a lien on any specific asset." BLACK'S LAW DICTIONARY (8th ed.1999). A convertible debenture is "a debenture that the holder may change or convert into some other security, such as stock." *Id.*

2. In an amended petition filed on October 28, 2003, Roth added claims for conversion and promissory estoppel.

3. An interlocutory default judgment was entered against MAC on August 5, 2003.

4. The rule 11 agreement provided, in part, that Tidrow and JTA would supplement their responses to the disputed interrogatories to the extent documents were in their possession, custody, or control. Under the agreement, JTA withdrew its objections to production request number ten, revised the production response to production request number eleven, and withdrew its objection to production request number fifteen. Those production requests were as follows: (10) documents sufficient to identify the location of the principal office(s) of defendant; (11) documents evidencing defendant's authority to conduct business in the State of Texas; and (15) defendant's incorporation documents. All supplementation and production was due in the office of Roth's counsel no later than November 29, 2003.

paid Roth's attorney's fees. On February 9, 2004, the trial judge signed a sanctions order directing Tidrow and JTA to produce "all bank statements, checks or other financial records of Millennium Armor Corporation, John R. Tidrow and John Tidrow & Associates, Inc. from 2002 through the present within seven days from the date of this order at the office of Plaintiff's counsel." The order cautioned that if Tidrow and JTA failed to fully comply with the order, the court would enter judgment in Roth's favor. In addition, Tidrow and JTA were ordered to pay Roth $750 in attorney's fees.

One week after the trial court signed the sanctions order, Roth's counsel filed an affidavit of non-compliance. The affidavit described the financial documents which had been provided by MAC and JTA on February 12, 2004 in response to the court's sanctions order but noted that some documents ordered by the trial court were not produced. In particular, Roth's counsel asserted that no bank statements, checks, or other financial records from John R. Tidrow had been produced. Counsel also filed an affidavit in support of attorney's fees and a proposed judgment. On the same day that the affidavit of non-compliance was filed, the trial court entered judgment finding Tidrow and JTA failed to produce all of the bank statements, checks, or other financial records previously ordered. Without holding a hearing, the trial court struck Tidrow's answer and entered judgment in Roth's favor, awarding him $75,000 as the principal amount due on the debenture. The judgment states that "the court affirmatively finds fraud on the part of Defendants." The court's judgment also awards Roth $17,629 pre-judgment interest, $10,000 damages for his time and effort under the agreement, $100,000 exemplary damages, and $25,000 in attorney's fees.[5]

Tidrow and JTA filed a motion to set aside the judgment and for a new trial.[6] Following a hearing held on April 9, 2004, the trial court denied the motion for new trial. The next day John R. Tidrow filed for bankruptcy. On April 19, 2004, the trial court granted Roth's unopposed motion to sever the lawsuit against MAC and JTA. In October, the bankruptcy court granted relief from the automatic stay in Tidrow's bankruptcy. Tidrow subsequently filed a notice of appeal and a motion to reinstate pursuant to rule 8.2 of the Texas Rules of Appellate Procedure.[7]

---

5. The judgment awarded Roth an additional $3,000 in attorney's fees in the event the defendants filed an unsuccessful motion for new trial and an additional $7,500 for each unsuccessful appeal or petition for review.

6. The motion acknowledged that on February 12, 2004, in response to the court's order, "certain documents were produced on behalf of Defendants." "At that time," the motion continued, "counsel for Plaintiffs was advised that other documents which might be responsive were stored in storage facilities in North Carolina, to whom rent was owed, and the records were at that time unavailable. It was represented that some of these records may contain additional banking records which were the subject of this Court's February 9, 2004 Order on Sanctions." Furthermore, according to an affidavit from John R. Tidrow which accompanies the motion for new trial, MAC property, including some property belonging to JTA, was locked in three storage facilities in North Carolina. Unpaid rents of $28,000 and $4,000 were due on two of the three storage locations.

7. Roth suggested in his brief that this court might not have jurisdiction over the appeal since the motion to reinstate was pending before the trial court and had not been ruled on. We abated the appeal and remanded the case to the trial court for resolution of this issue. The trial court subsequently entered an order reinstating the case based on the order from the bankruptcy court granting relief from the automatic stay. The jurisdictional issue raised by Roth is therefore moot.

Tidrow raises two issues in this appeal. First, he argues that the trial court failed to follow proper procedures before striking his pleadings. Specifically, Tidrow asserts that he was entitled to an opportunity to be heard regarding the sufficiency of his document production prior to the signing of the final judgment. Tidrow also argues that there was no "direct relationship" between the offensive conduct and the sanction imposed and that the sanction was excessive. In his second issue, he argues that Roth's causes of action are not sufficiently pleaded to support the default judgment. He also claims the unliquidated damages are not supported by the evidence.

### DISCUSSION

 We review a ruling on a motion for sanctions under an abuse of discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex.2004). In so doing, we review the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the party's discovery abuse. *Response Time, Inc. v. Sterling Commerce (North America), Inc.*, 95 S.W.3d 656, 659 (Tex.App.-Dallas, no pet.). "The test for an abuse of discretion review is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but 'whether the court acted without reference to any guiding rules and principles.'" *Cire*, 134 S.W.3d at 839 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985)). The trial judge's ruling will be reversed only if it was arbitrary or unreasonable. *Id.*

 Discovery sanctions serve three purposes: (i) to secure the parties' compliance with the discovery rules; (ii) to deter other litigants from violating the discovery

rules; and (iii) to punish parties who violate the discovery rules. *Response, Inc.*, 95 S.W.3d at 660. The choice of sanctions under rule 215.2 of the Texas Rules of Civil Procedure is left to the sound discretion of the trial judge, but the sanction imposed must be just. *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex.2003) (per curiam) (citing *TransAmerican Nat. Gas. Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991)); *see also Response Time, Inc.*, 95 S.W.3d at 660; *Wal–Mart Stores, Inc. v. Butler*, 41 S.W.3d 816, 817 (Tex.App.-Dallas 2001, no pet.). In order for a sanction to be just, there must be, first, a direct relationship between the offensive conduct and the sanction imposed. *TransAmerican*, 811 S.W.2d at 917. Second, the sanction must not be excessive. *Id.* Because a trial judge's authority to impose "death penalty" sanctions is limited by due process concerns, the judge must first consider the availability of lesser sanctions before imposing a death penalty sanction and determine whether lesser sanctions would be adequate to secure compliance, deterrence, or punishment of the offender. *See Response Time, Inc.*, 95 S.W.3d at 660; *see also Cire*, 134 S.W.3d at 840 ("the trial court must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed"); *see also Spohn Hosp.*, 104 S.W.3d at 883 (record should contain some explanation of the appropriateness of the sanctions imposed).

TEX.R. CIV. P. 215.3 provides:

If the court finds a party is abusing the discovery process in seeking, making or resisting discovery or if the court finds that any interrogatory or request for inspection or production is unreasonably frivolous, oppressive, or harassing, or that a response or answer is unreasonably frivolous or made for purposes of delay, then the court in which the action

is pending may, after notice and hearing, impose any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of Rule 215.2(b).

Rule 215.3 requires "notice and hearing" before sanctions are imposed on a party. *Cire*, 134 S.W.3d at 843.

Tidrow first argues that there was no hearing prior to the signing of the final judgment and that he was entitled to a hearing to determine the sufficiency of his production prior to a default judgment being entered. We agree.

Although a trial court is not required to hold an "oral hearing" before imposing discovery sanctions, rule 215.3 requires notice and an opportunity to be heard prior to the imposition of sanctions. *See Cire*, 134 S.W.3d at 843–44. The affidavit of non-compliance from Roth's counsel and the judgment against Tidrow were filed on the same date. No notice or opportunity to respond was afforded to Tidrow prior to the entry of judgment. We find that the failure to give notice and an opportunity to be heard is error.

We therefore conclude the trial court abused its discretion in striking Tidrow's answer. Tidrow's first issue is granted. The trial court's judgment is reversed, and this case is remanded for further proceedings consistent with this opinion. We do not address Tidrow's second issue.