**Blakeney Conger DAVENPORT,
Appellant**

v.

**Kristen SCHEBLE, Appellee.**

**No. 05–05–01685–CV.**

Court of Appeals of Texas,
Dallas.

Aug. 7, 2006.

Rehearing Overruled Oct. 5, 2006.

Katharine B. Richter, Thompson & Knight L.L.P., Dallas, for Appellant.

Lindy D. Jones, Jones, Allen & Fuquary, L.L.P., Dallas, for Appellee.

Before Justices MORRIS, O'NEILL, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

In this restricted appeal, Blakeney Conger Davenport [1] appeals the trial court's order granting Kristen Scheble's motion for discovery sanctions and judgment rendering a default against him. In two issues, Davenport claims the trial court abused its discretion when it granted Scheble's motion requesting death penalty discovery sanctions and rendered a default judgment against him and the trial court erred when it awarded Scheble exemplary damages.

Because we conclude Davenport has demonstrated that the trial court erred in awarding Scheble exemplary damages, we reverse in part.

### FACTUAL AND PROCEDURAL BACKGROUND

Davenport and Scheble married in 1992 and divorced in 1998. The divorce decree divided their community property and awarded Scheble a promissory note in the amount of $400,000.

In 2005, Scheble sued Davenport for failure to pay the promissory note, the division of undivided community property, and fraud. Scheble claimed Davenport failed to pay $118,932.32 of the promissory note. Also, Scheble claimed Davenport failed to disclose fifty shares of stock in Blue Gill Technologies, Inc., which was acquired during their marriage. These shares split 1,000 to 1, increasing to 50,000 shares. Then, Blue Gill Technologies was acquired by CheckFree Holdings Corporation, converting the stock to 7,210 shares of CheckFree stock, which Davenport sold for $306,000. Further, Scheble alleged

---

1. The record also refers to Davenport as    "Blake."

Davenport retained additional undisclosed assets that were acquired during their marriage and, subsequent to their divorce, Davenport sold those assets for $50,000.

During the discovery process, Scheble served interrogatories and requests for production on Davenport, including requests for tax returns he filed after 1998. Davenport objected to Scheble's discovery requests. Scheble filed a motion to compel on September 27, 2004, which the trial court granted. The trial court ordered Davenport to fully respond to Scheble's discovery requests by December 21, 2004, and awarded Scheble $1,250 in attorney's fees.

In response to the trial court's order compelling discovery, Davenport partially responded to Scheble's discovery requests. Enclosed with his partial response was a letter from Davenport's attorney stating, "Defendant's Responses, however, are inadequate ... because I'm waiting on the remaining documents needed to fully respond to Plaintiff's Interrogatories. Defendant will formulate adequate responses at a later date upon receipt of the remaining documents to be produced." Davenport did supplement some of his responses to Scheble's discovery requests but failed to fully respond or produce his tax returns for 2001, 2002, or 2003.

During the pendency of the lawsuit, Davenport moved to Beverly Hills, California. Also, Davenport's counsel filed a motion to withdraw due to nonpayment, which the trial court conditionally granted.

On April 22, 2005, Scheble filed a motion for discovery sanctions requesting the trial court to strike Davenport's pleadings. Before the hearing on the motion for discovery sanctions, Davenport telephoned Scheble, her counsel, and the trial court and stated he was not going to attend the hearing but he wanted to agree to a judgment. After the hearing, the trial court granted Scheble's motion for discovery sanctions, striking Davenport's pleadings and awarding Scheble $1,250 in attorney's fees.

After the trial court struck Davenport's pleadings, Scheble moved for a default judgment. The trial court heard evidence on Scheble's motion for a default judgment and, at the conclusion of the hearing, rendered a default judgment against Davenport. With respect to her claim for failure to pay the promissory note, the trial court awarded Scheble $118,932.32, the principal amount owed, $19,585.37 in prejudgment interest, postjudgment interest at 15% per annum, and $55,400 in attorney's fees. On her claims for division of the undivided community property and fraud, the trial court awarded Scheble $306,000, the value of the undivided Blue Gill or CheckFree stock, $50,000 for other undivided assets, $350,000 in exemplary damages, and $140,000 in attorney's fees.

## DISCUSSION

A restricted appeal is a direct attack on the trial court's judgment. *Gen. Elec. Co. v. Falcon Ridge Apartments, Joint Venture,* 811 S.W.2d 942, 943 (Tex. 1991); *Armstrong v. Benavides,* 180 S.W.3d 359, 362 (Tex.App.-Dallas 2005, no pet.); *Sutton v. Hisaw & Assoc. Gen. Contractors, Inc.,* 65 S.W.3d 281, 284 (Tex. App.-Dallas 2001, pet. denied). A restricted appeal is allowed only if the appellant (1) filed his notice of restricted appeal within six months after the judgment was signed; (2) was a party to the underlying lawsuit; (3) did not participate in the hearing that resulted in the judgment complained of and did not timely file any postjudgment motions or requests for findings of fact and conclusions of law; and (4) error is apparent on the face of the record. TEX.R.APP. P. 26.1(c), 30; *Alexander v. Lynda's Boutique,* 134 S.W.3d 845, 848

(Tex.2004); *Parsons v. Dallas County, Tex.,* 182 S.W.3d 451, 453 (Tex.App.-Dallas 2006, no pet.); *Armstrong,* 180 S.W.3d at 362.

Scheble argues this Court does not have jurisdiction over this appeal because Davenport has not satisfied the requirements for a restricted appeal because he participated in the hearing and there is no error apparent on the face of the record. She does not challenge the timeliness of Davenport's notice of restricted appeal or his status as a party to the underlying lawsuit. Because the resolution of Davenport's issues on appeal resolve Scheble's jurisdictional argument, we will address them together.

### Error Apparent on the Face of the Record

Davenport argues there is error apparent on the face of the record because the trial court erred when it imposed death penalty discovery sanctions and awarded Scheble exemplary damages.

■ For purposes of a restricted appeal, the face of the record consists of the reporter's record and all the papers in the clerk's record filed prior to final judgment. *Norman Commc'ns v. Tex. Eastman Co.,* 955 S.W.2d 269, 270 (Tex.1997); *Armstrong,* 180 S.W.3d at 362. However, a restricted appeal requires error that is apparent not error that may be inferred. *See Gold v. Gold,* 145 S.W.3d 212, 213 (Tex.2004). Although an appellate court is limited to considering the face of the record in a restricted appeal, its scope of review is the same as in an ordinary appeal, i.e., it reviews the entire case. *See Norman,* 955 S.W.2d at 270; *Armstrong,* 180 S.W.3d at 362.

### Discovery Sanctions

In his first issue, Davenport claims the trial court abused its discretion when it granted Scheble's motion requesting death penalty discovery sanctions and rendered a default judgment against him. He contends the face of the record establishes the trial court failed to consider the effectiveness of lesser sanctions, to determine the party responsible for the discovery problems, and to find he acted in flagrant bad faith. Scheble responds that the trial court previously imposed lesser sanctions and, despite those sanctions, Davenport refused to comply with the trial court's order compelling discovery.

■ An appellate court reviews a trial court's ruling on a motion for discovery sanctions for an abuse of discretion. *See Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex.2004); *Tidrow v. Roth,* 189 S.W.3d 408, 412 (Tex.App.-Dallas 2006, no pet.). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *See Cire,* 134 S.W.3d at 839; *Tidrow,* 189 S.W.3d at 412. An appellate court reviews the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the party's discovery abuse. *Tidrow,* 189 S.W.3d at 412; *Response Time, Inc. v. Sterling Commerce (N. Am.), Inc.,* 95 S.W.3d 656, 659 (Tex.App.-Dallas 2002, no pet).

■ Discovery sanctions are authorized by Texas Rule of Civil Procedure 215. *See* Tex.R. Civ. P. 215. If a party fails to comply with an order compelling discovery or abuses the discovery process, a trial court is authorized to strike the party's pleadings or render a judgment by default after notice and a hearing. *See* Tex.R. Civ. P. 215.2(b)(5), 215.3. Any sanction that adjudicates a claim and precludes the presentation of the merits of the case constitutes a "death penalty" sanction. *Adkins Servs., Inc. v. Tisdale Co.,* 56 S.W.3d 842,

845 (Tex.App.-Texarkana 2001, no pet.) (citing *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 845 (Tex.1992); *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex.1991)).

Discovery sanctions serve three purposes: (1) to secure the parties' compliance with the discovery rules; (2) to deter other litigants from violating the discovery rules; and (3) to punish parties who violate the discovery rules. *Response, Inc.*, 95 S.W.3d at 660. Although the choice of sanction is left to the sound discretion of the trial judge, the sanctions imposed must be just. *See* Tex.R. Civ. P. 215.2; *Cire*, 134 S.W.3d at 839; *Tidrow*, 189 S.W.3d at 412; *Response Time*, 95 S.W.3d at 660. In order for a sanction to be just (1) it must have a direct relationship with the offensive conduct, i.e., it must be directed toward remedying the prejudice to the innocent party and (2) it must not be excessive, i.e., the trial court must consider the availability of less stringent sanctions and whether those lesser sanctions would promote full compliance. *See Cire*, 134 S.W.3d at 839; *TransAmerican*, 811 S.W.2d at 917; *Tidrow*, 189 S.W.3d at 412; *Response Time*, 95 S.W.3d at 660.

Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that the party's claims or defenses lack merit. *TransAmerican*, 811 S.W.2d at 918. However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the trial court may presume that an asserted claim or defense lacks merit and dispose of it. *Id.*

First, we address Davenport's argument that the trial court abused its discretion because it failed to consider the availability and effectiveness of lesser sanctions. The record shows the trial court previously imposed lesser sanctions when it granted Scheble's motion to compel discovery and ordered Davenport to pay her attorney's fees. The trial court's order imposing death penalty discovery sanctions references the prior order compelling discovery and indicates it was ineffective. It states

> The Court further finds that, despite repeated demands by [Scheble's] counsel, [Davenport] has not fully complied with the Court's prior order and has supplied only a few documents, did not provide meaningful amended answers to interrogatories as ordered by this Court, did not produce federal income tax returns for years 2001, 2002, and 2003, and did not answer at least Interrogatory Nos. 1 and 2.

Accordingly, we conclude the trial court considered the availability of lesser sanctions and whether they would promote full compliance.

Second, we address Davenport's argument that the trial court abused its discretion because it failed to determine he was the party responsible for the discovery problems and failed to find he acted in flagrant bad faith. The trial court's order granting Scheble's motion for discovery sanctions states, "The Court further finds that [Davenport's] refusal to comply with this Court's order was ungrounded and without justification." Accordingly, we conclude the trial court's order clearly states the discovery problems were Davenport's fault. *See In re J.D.N.*, 183 S.W.3d 128, 131 (Tex.App.-Dallas 2006, no pet.).

We conclude the trial court did not abuse its discretion when it granted Scheble's motion requesting death penalty sanctions and rendered a default judgment against Davenport. Davenport's first issue is decided against him.

## Exemplary Damages

█ In his second issue, Davenport argues the trial court erred when it awarded Scheble exemplary damages. He contends the award of exemplary damages was based on Scheble's fraud claim and, as a matter of law, there is no independent tort for fraud based on the wrongful disposition of community property. Scheble responds that she proved actual fraud with evidence of Davenport's intentional concealment of community assets.

█ Texas recognizes the concept of fraud on the community estate which the trial court may consider when rendering a disproportionate division of community property. *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex.1998) (citing *Belz v. Belz*, 667 S.W.2d 240, 247 (Tex.App.-Dallas 1984, writ ref'd n.r.e.)). A claim of fraud on the community estate is a means by which a spouse may recover specific property wrongfully conveyed or obtain a greater share of the community estate in order to compensate her lost interest in the community estate. *See Belz*, 667 S.W.2d at 246–47. However, the concept of fraud on the community estate is not an independent tort giving rise to a cause of action between spouses. *Schlueter*, 975 S.W.2d at 588. Further, the concept of fraud on the community estate does not give rise to punitive damages because punitive damages require a finding of an independent tort with accompanying actual damages. *See id.* at 589.

█ A trial court may award a money judgment to one spouse against the other in order to achieve an equitable division of the community estate. *Id.* at 588. The money judgment serves to recoup the value of the wronged spouse's share of the estate which was lost through fraud. *Id.* However, that money judgment will never exceed the total value of the community estate because the amount of the money judgment is directly referable to the specific value of lost community property. *Id.*

Scheble sued Davenport for fraud alleging he knowingly concealed material information from her and made false representations that caused her to rely on his promissory note and consent to the division of their community property. She claimed Davenport's fraud caused her to suffer damages in the amount of $306,000 and, because his actions were willful, wanton, and malicious, she requested exemplary damages at two times the amount of her damages. On Scheble's claims for the division of undivided community property and fraud, the trial court's default judgment awards her a disproportionate division of the undivided community property, exemplary damages, and attorney's fees. The default judgment states, in part

IT IS FURTHER ORDERED, ADJUDGED and DECREED that [Scheble] be, and hereby is, awarded judgment against [Davenport], for fraudulently concealing the existence and subsequent sale of the Undivided Assets ... and other fraudulent acts, as follows:

1. For the amount of $306,000.00, which is equal to the value of the remaining undivided BlueGill and/or CheckFree Stock, or its proceeds, having due regard for the rights of each party, and the Court finds such an award is a just and right division of said undivided assets, plus prejudgment interest on such amount from 12/31/2000 until the date of judgment;

2. For the additional amount of $50,000 for other known undivided assets which [Davenport] fraudulently concealed from [Scheble] during their divorce proceedings;

3. For the additional sum of $350,000.00 for exemplary damages against [Davenport].

■ Based on the record, Scheble's claim for fraud is not an independent tort giving rise to a cause of action between spouses. *See Schlueter*, 975 S.W.2d at 588. Accordingly, she is not entitled to exemplary damages. *See id.* at 589. However, the trial court was able to consider her evidence of fraud on the community estate when it divided the community property and render her a disproportionate amount of that community property. Davenport does not challenge the trial court's disproportionate division of the undivided community property in favor of Scheble.

We conclude the trial court erred when it awarded Scheble exemplary damages on her claim for fraud and this error is apparent on the face of the record. Davenport's second issue is decided in his favor.

### *Participation in the Hearing*

■ Scheble argues Davenport participated in the sanctions hearing because he called the trial court three days before the hearing to state he was not going to attend. Davenport responds that he was not present at the hearing, his telephone call to the trial court three days before the scheduled hearing was not the decision-making event, and the trial court and Scheble decided not to contact him during the hearing at the telephone number he provided.

■ Participation for purposes of a restricted appeal should be construed liberally in favor of a right to appeal. *Stubbs v. Stubbs*, 685 S.W.2d 643, 645 (Tex.1985). The nature and extent of participation precluding a restricted appeal in any particular case is a matter of degree because trial courts decide cases in a myriad of procedural settings. *Texaco, Inc. v. Cent. Pow-*

*er & Light Co.*, 925 S.W.2d 586, 589 (Tex. 1996); *Parsons*, 182 S.W.3d at 453. The issue is whether the appellant participated in the decision-making event that resulted in the judgment adjudicating the appellant's rights. *Texaco*, 925 S.W.2d at 589; *Parsons*, 182 S.W.3d at 453. It is the fact of nonparticipation, not the reason for it, that determines an appellant's right to a restricted appeal. *Texaco*, 925 S.W.2d at 590; *Parsons*, 182 S.W.3d at 453. When an appellant did not respond to the motion and did not participate in the hearing that resulted in the judgment, he satisfies the nonparticipation element of a restricted appeal. *See Parsons*, 182 S.W.3d at 453.

Davenport's counsel withdrew before Scheble filed her motion for discovery sanctions and Davenport did not file a response. Three days before the hearing on Scheble's motion for discovery sanctions, Davenport telephoned Scheble and the trial court and left a message with Scheble's attorney. He told Scheble and the trial court he would not be attending the hearing because he did not have an attorney and he had to work. Also, he indicated he wanted to agree to a judgment. Davenport left his cellular telephone number with the trial court in the event he needed to be reached in California.

During the hearing on Scheble's motion for discovery sanctions, the trial court took judicial notice of an entry on its docket sheet documenting that Davenport telephoned the trial court and read the docket entry into the record. Scheble's counsel acknowledged that Davenport also telephoned him and Scheble. The trial court asked Scheble if there was any need to telephone Davenport and Scheble said no. Also, the trial court asked whether Scheble would be able to work something out with Davenport if they were given additional time and, again, Scheble said no. The trial

court granted Scheble's motion for discovery sanctions, striking Davenport's pleadings and awarding her attorney's fees. The trial court's order granting Scheble's motion for discovery sanctions states, "[Davenport], although duly notified of the hearing, did not appear."

Immediately after the trial court granted her motion for discovery sanctions, Scheble made an oral motion for a default judgment, which the trial court granted. The trial court's default judgment states, "[Scheble] and her attorney appeared in person and, [Davenport], although duly noticed of the hearing, failed to file a response or appear."

In this case, the decision-making event was the hearing on Scheble's motions for discovery sanctions and a default judgment. The clerk's record does not show that Davenport filed a response to Scheble's motion for discovery sanctions and the trial court's order granting that motion states Davenport was not at the hearing. Also, the trial court's default judgment states Davenport did not file a response and was not present at the hearing. Accordingly, we conclude Davenport did not participate in the decision-making event that resulted in the default judgment against him. *See Parsons,* 182 S.W.3d at 453–54.

## CONCLUSION

This Court has jurisdiction over this appeal. The trial court did not abuse its discretion when it granted Scheble's motion requesting death penalty discovery sanctions and rendered a default judgment against Davenport. The trial court erred when it awarded Scheble exemplary damages on her claim for fraud.

The trial court's default judgment is affirmed in part and reversed in part and

rendered that Scheble take nothing on her claim for exemplary damages.