**Reversed and Remanded and Opinion Filed March 4, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00685-CV

**ASSOCIATED AIR CENTER LP F/K/A A LANDMARK AVIATION CO.;
ASSOCIATED AIR CENTER INTERNATIONAL, INC.; AND DAE AVIATION
HOLDINGS, INC. D/B/A DUBAI AEROSPACE, Appellants
V.
TARY NETWORK LTD. AND CITADELLA INTERNATIONAL GROUP LTD.,
Appellees**

**On Appeal from the 162nd Judicial District Court
Dallas County, Texas
Trial Court Cause No. 10-01620**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Stoddart
Opinion by Justice Francis

Tary Network Ltd. and Citadella International Group Ltd. sued appellants Associated Air

Center LP, Associated Air Center International, Inc. and DAE Aviation Holdings, Inc. d/b/a

Dubai Aerospace for alleged breaches of obligations under letters of intent regarding the interior

finish-out of luxury jet airplanes. As a result of a pretrial sanction for discovery misconduct,

appellants were not allowed to present evidence of their affirmative defenses at trial. After

hearing two weeks of testimony, a jury found in appellees' favor.

The dispositive issue in this appeal is whether the trial court's death penalty sanction was

error. Because the record fails to show that the trial court considered any lesser sanction, we

conclude it was error. We therefore reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

In the mid to late 2000s, there was a demand for luxury business aircraft, but supply was limited. Recognizing a potential to make money, Iouri Chliaifchtein, a London-based businessman, came up with a business plan to purchase "green" or unfinished aircraft, secure "slots" at a completion center for the finish-out of the plane's interior, and then package the two positions for sale at a profit. He formed special purpose entities, Tary and Citadella, to secure the contracts with the aircraft manufacturers and the completion centers.

In October 2006, Chliaifchtein came to Dallas and met with AAC's vice president of sales and marketing, Patricio Altuna. AAC completes aircraft interiors. Chliaifchtein explained his business model and said he wanted the "highest level of completions that AAC does." Two months later, appellees entered into contracts with Boeing and Airbus for the future delivery of two aircraft, each costing about $46.5 million. Then, after months of negotiations, in late 2007, Citadella and AAC executed a Letter of Intent regarding the completion of the Citadella aircraft. Tary executed a similar Letter of Intent in June 2008. The LOIs secured future completion slots for the aircraft and required AAC to negotiate in good faith with appellees to agree on a preliminary specification/design package, works schedule, and contract price for the interior finish-out to incorporate into a definitive agreement. Both LOIs contained milestone dates for finalizing and signing the definitive agreements. According to the LOIs, each appellee put up a $2 million deposit to secure the completion slots. The LOIs also set out the conditions upon which the deposit, or some portion, would be refunded. DAE guaranteed the return of the deposits under the LOI terms.

Ultimately, a definitive agreement was never finalized, and the aircraft were never delivered to AAC. Appellees asserted that appellants, once they had secured the $4 million in

deposits, began unilaterally increasing the completion prices and failed to negotiate in good faith to reach agreements on the interior of the aircraft. Appellees demanded the return of their deposits, and appellants refused. In February 2010, appellees sued appellants, alleging causes of action for fraud, fraud in the inducement, breach of contract, conversion of the deposits, money had and received/unjust enrichment, and conspiracy to defraud. The AAC defendants and DAE filed separate identical answers, asserting a general denial and affirmative defenses.

Shortly after filing suit, appellees served appellants with their first set of combined discovery requests. Included in the requests and as relevant to this appeal, appellees sought documents related to each of appellants' pleaded affirmative defenses.[1] Thereafter, appellants served their objections and responses, and asserted the same multiple objections to each of the requests.[2]

In April 2012, as the July trial date neared, new counsel substituted into the case to represent appellees and, over the next week, a flurry of motions followed. First, appellees filed two identical no-evidence motions for summary judgment – one directed at the AAC defendants and one directed at DAE – on appellants' affirmative defenses. The next day, appellees filed a motion for expedited hearing on appellants' two-year-old discovery objections, including the requests related to the pleaded affirmative defenses, and requested the court to overrule each objection and to compel appellants to respond fully. Two days after that, appellees noticed a

---

[1] Specifically, the requests sought "all documents related to" the following: "any revocation", "any material breach of any agreement allegedly committed by either Tary or Citadella", "any fraud that allegedly bars, in whole or part, the claims of either Tary or Citadella", "any estoppel that allegedly bars, in whole or in part, the claims of either Tary or Citadella", "any representation by Tary or Citadella that [AAC International] relied upon", "any representation by Tary or Citadella that [AAC LP] relied upon", "any waiver of any rights by either Tary or Citadella", "any discharge of the obligations of [AAC International] and/or [AAC LP]", "Tary or Citadella's alleged failure to mitigate their damages", "any act or omission by Tary or Citadella that allegedly caused Tary or Citadella's injuries", "any counterclaim or setoff", "any condition precedent that has not been performed, that has been waived, that has been excused, or that has been otherwise satisfied", and "the failure of any agreement with Tary and/or Citadella to comply with the statute of frauds."

[2] The objections were as follows: "Defendants object to this request as lacking specificity and not stated with reasonable particularity. Defendants object to this request as overly broad in time and scope, unduly burdensome, and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request on the basis that it is an improper request for 'all documents' and is merely a fishing expedition which is prohibited. Defendants object to this request as calling for confidential, proprietary, and competitive information."

deposition of AAC's corporate representative to occur a week later on multiple topics divided into 150 subparts. After the deposition, appellees filed a "motion to set topics" for hearing and motion to compel. Among other things, appellees complained that appellants' counsel had instructed the corporate representative, Chris Schechter, not to answer any questions about the factual bases for each affirmative defense despite the fact appellants had not objected to the category requesting such testimony.[3] Appellees moved to compel answers to the questions and requested costs and attorneys' fees in connection with reconvening the deposition. Alternatively, they sought to strike appellants' defenses.

While the discovery motions were pending, appellants filed a response to the no-evidence motions for summary judgment and attached the four-page affidavit of Altuna, AAC's vice president of sales, to raise fact issues on their affirmative defenses. Appellees followed with a reply challenging the sufficiency of appellants' proof and a motion to strike Altuna's affidavit under Texas Rule of Civil Procedure 215. The motion to strike was based on appellants' alleged refusal to produce documents and answer questions about the factual bases for their affirmative defenses. In the motion, appellees argued that appellants had "steadfastly refused" to provide them with any evidence in support of their affirmative defenses for more than two years and were attempting to "ambush" them with evidence at the "eleventh hour." Appellees asserted appellants' conduct violated rule of civil procedure 215.3. Relying on rules 215.2(b)(4) and (5), they asked the court to strike the evidence or prohibit its introduction at trial as a sanction for appellants' misconduct. Attached to the motion were (1) appellees' first set of combined discovery requests to appellants, (2) appellants' objections and responses to the requests, (3) appellees' notice of deposition of AAC's corporate representative, (4) AAC's designation of

---

[3] Appellants' counsel took the position at the deposition that the subject of the questions—the factual bases of the affirmative defenses–had been "encompassed within all the factual questions" already asked during four hours of testimony, leaving only questions "that are based on legal analysis" which would "require [Schechter] to make legal analysis and draw conclusions . . . ." After more discussion, counsel for both sides agreed to "raise it with the court at a later date."

–4–

corporate representative and objections to the notice of deposition, (5) and appellees' motion to set the corporate representative topics for hearing and motion to compel.

Four days later, on May 15, 2012, the no-evidence motions for summary judgment and motion to strike were heard by the associate judge in a non-evidentiary hearing.[4]  On the same day, the associate judge signed separate orders granting the motions.  In the sanctions order, the judge ordered that appellants "shall not be allowed to oppose the no-evidence motions for summary judgment" and struck appellants' response to the motions.  The order was expressly based on rules 215.3 and 215.2(b)(4) and (5).  Although the associate judge did not make separate findings of fact and conclusions of law, the order stated the following:

> Specifically, [appellants] are attempting to present evidence to defeat no-evidence motions for summary judgment, while not allowing the corporate representative to answer any question regarding the factual basis of any of the affirmative defenses at issue.  This was done despite the fact that [appellants'] corporate representative was properly noticed for deposition on the topics of the factual basis of each affirmative defense; no objection was made to these topics; and this discovery is specifically permissible pursuant to TEX. R. CIV. P. 192.3 (j).  The Court further finds as a basis for its Order that [appellants] refused to substantively answer any of the requests for production regarding the affirmative defenses at issue, instead objecting to every one of them.

Additionally, in the order, the judge stated the sanction was not "excessive in light of [appellants'] bad faith and flagrant disregard of the discovery obligations" imposed by the rules.  The order stated the judge considered lesser sanctions but found appellant's "egregious conduct" warranted the sanction imposed and lesser sanctions would not promote compliance with the rules.  Finally, the associate judge found appellants' conduct "justifies the presumption that their asserted affirmative defenses lack merit."

---

[4] We do not have a record of the hearing before the associate judge, apparently because it was not recorded.  Absent a specific indication or assertion to the contrary, we presume a pretrial hearing is nonevidentiary and that the trial court considered only the evidence filed with the clerk. *Michiana Easy Livin' Country v. Holten*, 168 S.W.3d 777, 783 (Tex. 2005).  Here, the sanctions order expressly recites the judge considered "the Motion, any responses thereto, and the arguments of counsel."  Further, at oral argument, appellants' counsel was specifically asked if the hearing was evidentiary, and appellants' counsel responded it was not, and appellees' counsel, when asked, did not assert otherwise.

Appellants filed a timely written appeal of both rulings to the district court. In their appeal, appellants asserted the rulings were error because (1) they did not abuse the discovery process and (2) even if they failed to respond to a valid discovery request, the sanction was excessive. Attached to the appeal were copies of the no-evidence motion, response, reply and motion to strike, the associate judge's orders granting both motions, and a chart that summarized various deposition testimony with record citations to support appellants' affirmative defenses. Appellees filed objections to appellants' evidence, and in particular, the deposition summary chart.

On June 11, 2012, the trial court heard the appeal in a non-evidentiary hearing. At the time of the hearing, the motion to compel regarding the corporate representative's deposition had not yet been heard but was set for hearing. With respect to the documents motion, both sides told the trial judge that the associate judge had orally overruled appellants' objections and ordered documents produced, but no written order had issued. Appellants told the trial judge, as they said they had told the associate judge, that all documents responsive to the requests had been produced. They also stressed that the motion to compel deposition answers had not been heard. Appellants argued the associate judge granted death penalty sanctions for what she perceived to be "an improper response" to requests for production and had not tried or considered lesser sanctions.

In response, appellees argued they were "completely thwart[ed]" in their attempts to discover information related to appellants' affirmative defenses. Appellees said they made "[v]ery noncontroversial" contention requests for production of documents on the subject, which appellants "loaded up with objections." And, despite the associate judge's overruling the objections, appellees said appellants had not amended or supplemented their response to either produce responsive documents or assert there were none. As for the deposition, appellees argued

appellants acted improperly by not answering questions regarding the factual basis of their affirmative defenses when that topic was included in the notice of deposition. They also argued the associate judge considered lesser sanctions because "she put it in her order."

After hearing counsels' arguments, the trial court denied the appeal. The trial court's order affirmed the associate judge's rulings granting the motion to strike under rule 215 and the no-evidence motions for summary judgment. On June 26, 2012, fifteen days after the denial of the appeal and six weeks after the original sanction order, the associate judge signed orders on both motions to compel. In one order, the judge ordered appellants to re-produce its corporate representative to testify for 2.5 hours on certain topics but determined the discovery sanction mooted the request for testimony regarding affirmative defenses. In a second order, despite the previous sanction order, the associate judge granted the motion to compel production of documents related to the affirmative defenses and ordered appellants to identify by Bates number any previously produced documents. The order gave appellants until July 16, 2012 to comply.[5]

The case ultimately went to trial eight months later before a different trial court judge who had been newly elected. In pretrial hearings, the trial court adhered to the previous orders that effectively struck the affirmative defenses and ruled that evidence related to those defenses would not be admitted at trial. Additionally, appellants complain other "broad categories" of evidence were excluded based on the sanctions order and summary judgment. After hearing two weeks of evidence, the jury found the AAC defendants failed to comply with the Tary and Citadella agreements, DAE failed to comply with the guarantees it issued to Tary and Citadella, and all of the defendants converted the slot deposits. Based on the verdict, the trial court

---

[5] It is unclear whether this is the written order that resulted from the associate judge's oral ruling referenced by the parties at the de novo appeal before the trial court; however, the order recites the motion was heard "this day," which would have been after the appeal. At any rate, it is the only written order on appellees' motion to compel production of documents contained in the appellate record.

rendered a judgment of nearly $38 million in actual damages, prejudgment interest, attorney's fees, and costs, plus postjudgment interest.

In their first issue, appellants argue the trial court abused its discretion by issuing the sanctions order for two reasons. First, they argue the order impermissibly punished them for their lawyer's conduct. Second, they argue the trial court failed to test lesser sanctions or explain why lesser sanctions would not be effective. We agree with appellants on their second argument.

We review a trial court's imposition of discovery sanctions for an abuse of discretion. *Am. Flood Research, Inc. v. Jones,* 192 S.W.3d 581, 583 (Tex. 2006) (per curiam). A trial court abuses its discretion if it acts without reference to any guiding rules and principles such that its ruling was arbitrary or unreasonable. *Id.* In making our review, we consider the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the party's discovery abuse. *Imagine Auto. Grp. v. Boardwalk Motor Cars, Ltd.*, 430 S.W.3d 620, 633 (Tex. App.—Dallas 2014, pet. filed).

Discovery sanctions serve three purposes: (1) to secure the parties' compliance with the discovery rules; (2) to deter other litigants from violating the discovery rules; and (3) to punish parties who violate the discovery rules. *Imagine Auto. Grp.*, 430 S.W.3d at 633. When a party abuses the discovery process in resisting discovery, the trial court may impose sanctions to, among other things, prohibit the disobedient party from supporting or opposing designated claims or defenses or to strike the party's pleadings. *See* TEX. R. CIV. P. 215.3; 215.2(b)(4), (5). Any sanction that adjudicates a claim and precludes the presentation of the merits of the case constitutes a "death penalty" sanction. *Davenport v. Scheble*, 201 S.W.3d 188, 193–94 (Tex. App.—Dallas 2006, pet. denied).

Although the choice of sanctions under civil procedure rule 215 is left to the sound discretion of the trial court, the sanctions imposed must be just. *Imagine Auto. Grp.*, 430 S.W.3d

at 633; *Response Time, Inc. v. Sterling Commerce (N. Am.), Inc.*, 95 S.W.3d 656, 660 (Tex. App.—Dallas 2002, no pet.). Whether a sanction is just is measured by two standards. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding). First, the sanction must bear a direct relationship to the offensive conduct. *Id.* A just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender. *Id.* Second, the sanction must not be excessive. *Id.* When assessing excessiveness, the punishment should "always fit the crime," and the sanction should be no more severe than necessary to further the purposes of sanctions generally. *See Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). A court must consider the availability of appropriate lesser sanctions, and, in all but the most egregious and exceptional cases, the court must first assess lesser sanctions before resorting to case-determinative or death penalty sanctions. *Id*. at 842. The imposition of severe sanctions, such as the death penalty sanction involved in this case, is also limited by due process concerns because it adjudicates the merits of a party's claim or defenses. *TransAmerican*, 811 S.W.2d at 917–18. Therefore, severe sanctions are not appropriate unless the offensive conduct justifies a presumption that the party's claims or defenses lack merit. *Id*. at 918.

The basis for the sanction was appellants' conduct in (1) not allowing the corporate representative to answer any question regarding the factual basis of the pleaded affirmative defenses, although the topics were noticed and no objection was made and (2) refusing to substantively answer any requests for production regarding the affirmative defenses and "instead objecting to every one of them." Assuming without deciding sanctions were warranted for appellants' conduct, we conclude the death penalty sanction imposed in this case was not. The record does not show that either the associate judge who originally imposed the sanction or the trial judge who affirmed the order on appeal considered or tested lesser sanctions or explained

–9–

why they would not be effective. Instead, the sanctions order simply recites, without any further explanation or analysis, that lesser sanctions were considered but "would not promote compliance with the Texas Rules of Civil Procedure." Beyond this general statement and description of the offensive conduct, the trial court in this case offered no reasoned explanation of the appropriateness of the sanctions imposed. The law, however, requires more. *Cire*, 134 S.W.3d at 840 (explaining trial court "need not test the effectiveness of each available lesser sanction by actually imposing the lesser sanction on the party before issuing the death penalty; rather, the trial court must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed); *GTE Commc'ns v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (orig. proceeding) (giving no deference to "such unsupported conclusions" when order merely stated lesser sanctions would have been ineffective but court did not explain why and record did not indicate why); *see also Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882–83 (Tex. 2003) (per curiam) (noting record should "contain some explanation of the appropriateness of the sanctions imposed" and reiterating death penalty sanction may only be imposed in first instance when facts of case are exceptional and such sanction is "clearly justified").

Further, there is nothing in the record to indicate lesser sanctions would not have been effective to secure appellants' compliance and to sufficiently address any harm to appellees. If anything, the record shows the contrary. We need look no further for support than the associate judge's actions six weeks after the death penalty sanction was imposed when she (1) ordered the reconvening of the corporate representative's deposition and identified topics to be addressed and (2) ordered appellants to produce documents related to their affirmative defenses and to identify by Bates number any previously produced document. In addition, as a lesser measure, the court could have taxed costs of the deposition against appellants and awarded attorney's fees. *See TransAmerican*, 811 S.W.2d at 918 (giving several examples of lesser sanctions trial court

could have considered or used before imposing death penalty sanction, including ordering deposition for specific date and punishing noncompliance with contempt and taxing costs of deposition against party and awarding attorney's fees).

In reaching this conclusion, we are unpersuaded by appellees' argument that (1) the sanction "was hardly a 'death penalty' because it did not strike [appellants'] answers" and (2) even if it was, the sanction was proper. As noted previously, any sanction that adjudicates a claim and precludes the presentation of the merits of the case constitutes a "death penalty" sanction. *Davenport,* 201 S.W.3d at 193–94. The sanction in this case foreclosed an avenue that would have allowed appellants to present evidence relevant to their affirmative defenses and support corresponding jury questions. It functioned as a death penalty sanction. *See In re Noble Drilling*, 449 S.W.3d 625, 631 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *In re Bledsoe*, 41 S.W.3d 807, 813 (Tex. App.—Fort Worth 2001, orig. proceeding) (concluding that exclusion of "witnesses, exhibits, and proposed jury instructions, definitions, and questions will prevent [defendant] from presenting the merits of his affirmative defenses at trial, is tantamount to striking his pleadings, and is case determinative" and constitutes death penalty sanction).

With respect to their second argument, appellees assert appellants' conduct was so egregious it justifies a presumption that their affirmative defenses lacked merit. They argue even though the associate judge overruled appellants' objections and ordered production of documents, appellants had not amended their response or produced the documents by June 11, 2012, the day of the appeal before the trial court. But the only written order contained in this record regarding the subject gave appellants until July 16, 2012 to comply and there is nothing in the record to suggest, nor does anyone argue, that appellants had not complied by that date. Appellees also assert the "hindrance of depositions" justifies the sanction. As noted previously, the motion to compel regarding the deposition had not been heard at the time of the summary

judgment/ sanction hearing. When the motion was heard weeks later, the associate judge ordered the corporate representative to sit for another 2.5 hours of deposition, an appropriate lesser measure.

Finally, we reject appellees' assertion that the summary judgment orders provide an independent basis for dismissing appellants' affirmative defenses. Specifically, they argue appellants have not challenged the summary judgment orders and the only summary judgment evidence attached to the response was legally insufficient to raise a fact issue on any of appellants' affirmative defenses. We first note that while appellants did not bring a separate issue challenging the summary judgment orders, they have asserted as part of their argument that the trial court erroneously granted the motions as a discovery sanction. As for the ruling itself, neither the associate judge nor the trial judge considered the evidence attached to the no-evidence motions for summary judgment (or any objections to it) in granting the summary judgment motions. Rather, the order on the motion to strike specifically stated that appellants "shall not be allowed to oppose the no-evidence motions for summary judgment, and their response to the no-evidence motions for summary judgment is stricken." Although the summary judgment orders stated the court had considered "any responses" to the motion, there was no response to consider. So, to the extent appellees ask this Court to consider, for the first time on appeal, the merits of the no-evidence motion for summary judgment in light of appellants' evidence, and in particular whether Altuna's affidavit raised fact issues on appellants' affirmative defenses, we decline to do so.

Case determinative sanctions may be imposed in the first instance only in exceptional cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules. *See GTE Commc'ns*, 856 S.W.2d at 729. Nothing about the facts of this case suggest it is one of the "exceptional" cases warranting "trial by sanction." The

record does not show repeated efforts by the trial court to obtain appellants' compliance with their discovery obligations. *See Imagine Automotive*, 430 S.W.3d at 635. Nor does it evidence egregious conduct and blatant disregard for the discovery process through the repeated violation of court orders. *See Cire*, 134 S.W.3d at 842. We therefore conclude the death penalty sanction imposed in this case was an abuse of discretion. Further, we conclude the error was harmful. *See* TEX. R. APP. P. 44.1(a). As previously set out, by refusing to allow appellants to produce evidence to defeat appellees' no-evidence motion for summary judgment and by then granting the motion, the trial court summarily disposed of appellants' affirmative defenses. The ruling not only precluded appellants from presenting evidence on their affirmative defenses for the jury to consider, it denied appellants the benefit of jury instructions and questions on the matters and impacted how they presented their case.

Having so concluded, we now consider the disposition of the appeal. We need not address appellants' remaining "alternative" issues. We acknowledge that some of these issues raise legal sufficiency grounds that, if successful, could entitle appellants to rendition of judgment. *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992) (recognizing as a general rule that "when we sustain a no evidence point of error after a trial on the merits, we render judgment on that point"). Nevertheless, appellants have sought review of these issues "[i]f the Court does not grant a new trial on [the sanctions issue.]" Moreover, even if the issues were not raised in the alternative, we would still reverse and remand for further proceedings, instead of rendering judgment. As long as there is a probability a case has for any reason not been fully developed, an appellate court has the discretion to remand rather than render a decision. *United States Fire Ins. Co. v. Carter*, 473 S.W.2d 2, 3 (Tex. 1971) (per curiam); *Kondos v. Lincoln Prop. Co.*, 110 S.W.3d 716, 724 (Tex. App.—Dallas 2003, no pet.); *Scott*

*Bader, Inc. v. Sandstone Prods., Inc.,* 248 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

Here, the sanction ordered by the trial court affected and shaped the presentation and development of this case during trial for both sides. Had appellants not been precluded from presenting their affirmative defenses, "it seems indisputable that both sides would have presented additional evidence during trial." *Scott Bader, Inc.*, 248 S.W.3d at 822 (remanding case for new trial, despite legal sufficiency issues, when sanctions ordered by trial court prevented full development of case). And, at least with respect to appellants, they would have been entitled to submit questions to the jury on their affirmative defenses. We therefore conclude a remand is the appropriate disposition.

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

130685F.P05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ASSOCIATED AIR CENTER LP F/K/A A
LANDMARK AVIATION CO.;
ASSOCIATED AIR CENTER
INTERNATIONAL, INC.; AND DAE
AVIATION HOLDINGS, INC. D/B/A
DUBAI AEROSPACE, Appellants

No. 05-13-00685-CV        V.

TARY NETWORK LTD., AND
CITADELLA INTERNATIONAL GROUP
LTD, Appellees

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 10-01620.
Opinion delivered by Justice Francis;
Justices Evans and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants ASSOCIATED AIR CENTER LP F/K/A A LANDMARK AVIATION CO.; ASSOCIATED AIR CENTER INTERNATIONAL, INC.; AND DAE AVIATION HOLDINGS, INC. D/B/A DUBAI AEROSPACE recover their costs of this appeal from appellees TARY NETWORK LTD. AND CITADELLA INTERNATIONAL GROUP LTD.  The obligations of Liberty Mutual Insurance Company as surety on appellants' joint supersedeas bond are **DISCHARGED**.

Judgment entered March 4, 2015.