**Affirmed in Part, Reversed and Remanded in Part, and Opinion Filed July 10, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00936-CV**

**WILLIS ALAN HIZAR AND ROOFMASTERS DFW, LLC, Appellants**
**V.**
**KENNETH HEFLIN AND ANNA HEFLIN, Appellees**

**On Appeal from the County Court at Law No. 7**
**Collin County, Texas**
**Trial Court Cause No. 007-01345-2020**

## OPINION

Before Justices Partida-Kipness, Nowell, and Wright[1]
Opinion by Justice Partida-Kipness

This proceeding arises from a dispute between homeowners and a contractor concerning removal of popcorn ceiling from a residential property. In the trial court, the homeowners, appellees Kenneth Heflin and Anna Heflin, accused appellants Willis Alan Hizar and Roofmasters DFW, LLC of failing to comply with discovery. The trial court granted the Heflins' motion to compel production and ultimately ordered Roofmasters and Hizar's pleadings struck for failure to comply with the trial court's orders compelling discovery. Roofmasters and Hizar appeal the default

---

[1] The Hon. Carolyn Wright, Justice, Assigned

judgment rendered following the issuance of death penalty sanctions and a bench trial.

## BACKGROUND

Hizar is the managing member of Roofmasters DFW, LLC.[2] The company's charter was forfeited on February 28, 2020. The following day, Kenneth Heflin entered into a contract with "Hizar f/k/a Roofmasters" for the removal of the popcorn ceiling in the Heflins' home and application of a smooth finish in its place. Anna Heflin did not sign the contract. Kenneth agreed to pay $8,600.00 for the project. That price included $6,300.00 for removal of the popcorn texture, $500.00 to prime the ceiling with Kilz, and $1,800.00 to apply a smooth surface to the ceilings. The quote included notes stating that the price for a smooth surface was listed in the quote, but the Heflins would decide "if they want a smooth finish or a light knockdown after job is started and a test area for smooth finish and light knockdown is applied in hallway." Kenneth agreed to pay fifty percent "upon acceptance of the quote" and the balance "the day of project completion." Kenneth paid Hizar $3,350.00[3] by check on Friday, March 6, 2020, and Hizar began work on the project.

---

[2] The certificate of formation for Roofmasters lists the entity name as "RoofMasters-DFW LLC." The parties' contract also refers to "RoofMasters-DFW LLC." The parties, however, refer to RoofMasters-DFW LLC as "Roofmasters DFW, LLC" or "Roofmasters" throughout their briefing here and in the trial court. We will follow the parties' lead and refer to "RoofMasters-DFW LLC" as "Roofmasters DFW, LLC" or "Roofmasters."

[3] $3,350.00 is half of the quoted costs for popcorn texture removal and priming the ceiling.

–2–

Kenneth testified that Hizar said the project would be completed within three or four days. But after starting work, Hizar informed the Heflins that the project would take an additional four or five days because the popcorn ceiling was more difficult to remove than he anticipated. Hizar testified that the difficult removal of the popcorn ceiling kept him "from making a smooth surface from scraping it off" and required him "to do something else to make it smooth." According to Hizar, the "something else" was putting a coat of mud over the popcorn texture. Hizar testified that he told the Heflins one coat of mud would cost an additional $1,800, and if two coats were required, the total additional cost would be $4,000 to $5,000.

The Heflins maintained, however, that they did not agree to any additional cost. Anna testified that Hizar texted the Heflins on Sunday, March 8, 2020, and asked them to meet him at the house because he had encountered a problem. According to Anna, they met with Hizar immediately and were told that it would be hard to apply a smooth surface because Hizar could not get the popcorn texture to come off. If they wanted a smooth surface, Hizar said the price would increase. But Hizar told the Heflins that he could apply a texture instead that would cost less than the original quoted price for a smooth surface. The Heflins agreed to a textured finish because that was the less expensive and quicker option.

On March 12, 2020, Kenneth paid Hizar an additional $1,400. According to Kenneth, the $1,400 payment was for materials to finish the job. Kenneth considered

the second payment to be "an additional advancement" of money toward the total contract price.

The Heflins inspected the work done by Hizar the following Saturday, March 14, 2020. They found the work incomplete and defective. Photos admitted into evidence at trial showed lines on the ceiling, inconsistent texture, and overspray texture on light fixtures, ceiling fans, and other fixtures. Anna described the work as follows:

> It was not a knockdown texture. It had trowel marks, it had scrapings. Some areas were smooth, some were textured, some were more popcorn; the joints, the overspray down on it. All of our ceiling fixtures were still covered in plastic. All of our smoke detectors were removed with tape on them. It wasn't a complete job. He admitted it wasn't a complete job.

Hizar testified that he completed the work the Heflins paid for, which included applying one coat of mud, knockdown texture, and two coats of paint to the ceilings. He contended the ceilings "needed another coat of mud," but the Heflins would not pay for it, so he applied only one coat of mud and left the job:

> Q: Now, when you say you completed the scope of the everything [sic] in the work, what was done?
>
> A: I removed the popcorn texture to the best of my ability. I primed all the ceilings with KILZ. I put one coat of mud on the whole ceilings. In the trade it's called skim coating. So I coated the ceilings with mud. Then I textured with knockdown texture and painted with two coats of paint, and then we cleaned our mess up and loaded the truck up and that was it.
>
> Q: Out of the additional work that you recommended to the Heflins, what remained to be done?

A: The ceilings -- before the texture was applied, the ceilings needed another coat of mud.

Q: And why was it you left the job?

A: I was done. They didn't want to pay the extra money to have another coat of mud, and give me more time to do what needed to be done, so I finished the job, what's listed in the scope of work, and that was it.

On March 14, 2020, Hizar abandoned the work on the Property prior to completion of the Project. The Heflins hired JMS Drywall to complete the project and paid $3,500.00 for their work.

## PROCEDURAL HISTORY

Hizar sought payment of $7,400.00 from the Heflins plus daily late fees of 6.5%. According to Hizar, he provided labor and materials "worth at least $12,150.00," which left a balance of $7,400.00 after subtracting the Heflins' prior payments. On April 16, 2020, counsel for the Heflins sent Hizar a demand letter in which they disputed the amount owed and sought payment from Roofmasters and Hizar for the damage caused by the defective and incomplete work and additional damage caused to the Property. On May 29, 2020, Roofmasters and Hizar filed a lien affidavit against the Property in the amount of $7,400.00. On June 19, 2020, the Heflins sued Hizar. In a September 11, 2020 order, the trial court removed the lien on the Property and awarded the Heflins attorney's fees of $3,389.84. Thereafter, Hizar filed a counterclaim and Roofmasters filed a plea in intervention. The Heflins named Roofmasters a defendant in their first amended petition.

The Heflins filed their first motion to compel discovery responses on April 27, 2021. In that motion, the Heflins alleged Roofmasters and Hizar's objections to the Heflins' requests for production were unfounded and their responses to the requests were inadequate. The Heflins also challenged Roofmasters and Hizar's responses to the Heflins' first and second set of interrogatories and their response to the Heflins' request for disclosure of indemnity and insuring agreements. Hizar and Roofmasters responded to the motion to compel on June 4, 2021. On June 9, 2021, the Heflins filed a response to Hizar and Roofmasters' objections and responses to the Heflins' discovery requests. On June 11, 2021, the trial court heard the motion to compel, Roofmasters and Hizar's responses to the motion to compel, and the Heflins' challenges to Roofmasters and Hizar's objections and responses to discovery. A record of that hearing is not part of our appellate record. The clerk's record shows the trial court signed an order on the motion to compel on July 6, 2021 (the July 6 Order).

In the July 6 Order, the trial court ruled on Roofmasters and Hizar's objections and responses to the Heflins' discovery requests. The court sustained or overruled each objection and determined whether each discovery response was adequate or inadequate. For all discovery requests for which (1) Hizar or Roofmasters did not object or for which their objection was overruled or deemed waived; and (2) their response to the request was ruled inadequate, the trial court ordered Hizar and Roofmasters to do the following by Friday, June 25, 2021:

–6–

- Conduct a diligent search for all reasonably available documents and tangible things responsive to that request;

- Prepare and serve an adequate and truthful response to the request, without objection; and

- Produce any and all documents and tangible things that are responsive to that request, consistent with that adequate and truthful response, and within Defendants' "possession, custody, or control" as defined in TEX. R. CIV. P. 192.7(b).

Specifically, Hizar and Roofmasters were ordered to respond to and produce documents and tangible things responsive to the following requests:

- Request for Production Nos. 1, 6, 7, 26–41, 45, 46, 48, 50–56, 58–61, 63–68 to Roofmasters

- Request for Production Nos. 1, 6, 7, 26, 30, 33–39, 41, 47, 48, 51, 58, 61, 64, 66–71 to Hizar

As for their responses to the request for disclosure, the trial court ordered Hizar and Roofmasters to identify and produce a copy of any insurance policy that may satisfy part or all of a judgment in the underlying proceeding. The trial court also ruled that Hizar and Roofmasters could redact any bank account numbers on responsive documents.

On July 9, 2021, the Heflins filed a supplemental motion to compel and motion for discovery sanctions. In the supplemental motion, the Heflins asserted that the trial court "requested that the parties set the Motion to Compel for further hearing on July 9, 2021 to ensure that all documents were produced." The Heflins further stated that Hizar and Roofmasters served amended discovery responses on June 24, 2021, but served no documents at that time. According to the Heflins, Hizar and

Roofmasters "produced limited additional documents" on July 6, 2021, and July 8, 2021, and failed to include "a complete set of documents responsive to" the following requests for production:

- Requests for Production Nos. 6, 7, and 56 to Roofmasters[4]

- Requests for Production Nos. 6, 7, 39, 41, 59, and 60 to Hizar[5]

The Heflins asked the trial court to order Hizar and Roofmasters to produce the documents as required by the July 6 Order and pay the Heflins' reasonable expenses incurred preparing and filing the supplemental motion, and to order appropriate sanctions under Rule 215.2. *See* TEX. R. CIV. P. 215.2.

The trial court held a hearing on the supplemental motion to compel on July 9, 2021, and signed an order the same day. The appellate record does not include a transcript from that hearing. In the July 9 Order, the trial court made findings that (1) Roofmasters failed to comply with the "prior compel order" as to requests for production numbers 6, 7, 39, 40, 41, and 56; and (2) Hizar failed to comply with the "prior compel order" as to requests for production numbers 6, 7, 39, 41, 59, and 60.

---

[4] Request for production numbers 6, 7, and 56 to Roofmasters sought production of the following: all deposit slips for payments made from the Heflins to Roofmasters for the Project, all bank account statements in which Roofmasters deposited funds from the Heflins for the Project, and all documents evidencing any sale, transfer, or other disposition of funds or collateral of Roofmasters from 2020 to present.

[5] Request for production numbers 6, 7, 39, 41, 59, and 60 to Hizar sought production of the following: all deposit slips for payments made from the Heflins to Hizar for the Project, all bank account statements in which Hizar deposited funds from the Heflins for the Project, all general ledgers, check registers and other account records for Defendant for the years 2020 through present, all checking account statements, savings account statements, brokerage account statements and any and all other bank or investment account statements for Defendant from 2020 to present, all documents evidencing any sale, transfer, or other disposition of funds or collateral of Defendant from 2020 to present, and a list of all assets owned by Defendant.

The trial court then ordered Hizar and Roofmasters "to produce all responsive documents" to the listed requests by Monday, July 12, 2021. The order further states "[i]f Defendant fails to produce all responsive documents by Monday, July 12, 2021, Defendant's pleadings will be struck."

On July 14, 2021, the Heflins filed a motion to enforce the July 9 Order. In it, the Heflins asserted Hizar and Roofmasters "failed to produce any documents responsive" to the production requests addressed in the July 9 Order. The Heflins asked the trial court to strike Roofmasters and Hizar's pleadings, award the Heflins reasonable attorney's fees, and render a default judgment against Hizar and Roofmasters.

Hizar and Roofmasters filed their response to the motion to enforce on July 14, 2021. In the response, they asserted Roofmasters had provided full discovery responses and "there are only four responses by Hizar which the court has ruled are inadequate and for which Hizar has not provided documents."

The trial court heard the motion to enforce on July 22, 2021. The trial court did not explicitly rule on the motion to enforce during the hearing on the motion. But after hearing the parties' arguments on the motion, the trial court allowed the Heflins to present testimony and evidence as to the liability and damages portions of their claims. Then, in its July 29, 2021 Final Judgment, the trial court (1) found that Hizar and Roofmasters failed to comply with the trial court's "order signed June 11,

–9–

2021,"[6] and "order signed on July 9, 2021," (2) found that it is proper to strike Roofmasters and Hizar's pleadings, issue a default judgment as to those parties, and order them to pay the Heflins' reasonable and necessary attorney's fees, and (3) granted the motion to enforce, struck Roofmasters and Hizar's pleadings, granted default judgments against Hizar and Roofmasters, and awarded the Heflins damages of $8,250.00, attorney's fees of $29,051.88, and conditional appellate fees. The final judgment also states that the trial court "considered the severity of lesser sanctions and availability of less stringent sanctions, and whether such sanctions would fully promote [Hizar and Roofmasters] to comply with the Texas Rules of Civil Procedure and [the trial court's] orders regarding discovery."

On September 8, 2021, the trial court signed the Heflins' proposed findings of fact and conclusions of law and found in the Heflins' favor on each cause of action pleaded. The trial court denied Roofmasters and Hizar's motion for new trial by written order on September 14, 2021, and awarded the Heflins attorney's fees of $5,000 because Hizar and Roofmasters filed a motion for new trial that was not granted. This appeal followed.

---

[6] The hearing on the motion to compel was held on June 11, 2021. There is no order in the record, however, dated June 11, 2021. Rather, the July 6 Order states it is the ruling on matters heard at the June 11, 2021 hearing. We do not have a transcript of the June 11, 2021 hearing and, therefore, cannot determine whether the trial court ruled from the bench or signed an order at the hearing. The July 6 Order requires compliance by June 25, 2021. We, therefore, presume that a verbal or written order was either issued on June 11, 2021, or before June 25, 2021, and the July 6 Order was signed as a formality on July 6, 2021.

–10–

## ANALYSIS

In nine issues, Hizar and Roofmasters challenge the order striking their pleadings, the awards of damages and attorney's fees to the Heflins, and the expungement of the lien on the Heflins' property.

## I.    Death penalty sanctions

In their second issue, Hizar and Roofmasters contend the trial court abused its discretion by striking their pleadings. We address this issue first because it would be dispositive if sustained.

### A.    Standard of review

"We review a trial court's ruling on a motion for sanctions for an abuse of discretion." *Duncan v. Park Place Motorcars, Ltd.*, 605 S.W.3d 479, 488 (Tex. App.—Dallas 2020, pet. withdrawn). The test for an abuse of discretion is not whether, in our opinion, the trial court's actions were appropriate under the facts and circumstances of the case. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). Rather, we determine whether the trial court acted without reference to guiding rules and principles. *Id.* We will reverse a trial court's sanctions order only if the ruling was arbitrary or unreasonable. *Id.*

A ruling is arbitrary or unreasonable if the sanctions imposed do not further one of the purposes of discovery sanctions, namely, to secure the parties' compliance with discovery rules, to deter other litigants from violating the discovery rules, and to punish parties who violate the discovery rules. *Bodnow Corp. v. City of Hondo*,

721 S.W.2d 839, 840 (Tex. 1986). Moreover, there must be a direct relationship between the offensive conduct and the sanction imposed, and the sanction imposed must not be excessive. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992).

In reviewing a sanctions award, we review the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the party's discovery abuse. *Imagine Auto. Grp. v. Boardwalk Motor Cars, Ltd.*, 430 S.W.3d 620, 631 (Tex. App.—Dallas 2014, pet. denied) (citing *Response Time, Inc. v. Sterling Com. (N. Am.), Inc.*, 95 S.W.3d 656, 659 (Tex. App.—Dallas 2002, no pet.)). In imposing "death penalty" sanctions, the trial court may properly consider everything that has occurred during the history of the litigation and is not limited to considering only the last violation of the discovery rules. *See Jefa Co. v. Mustang Tractor & Equip. Co.*, 868 S.W.2d 905, 910 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *White v. Bath*, 825 S.W.2d 227, 230 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Berry–Parks Rental Equip. Co. v. Sinsheimer*, 842 S.W.2d 754, 757 (Tex. App.—Houston [1st Dist.] 1992, no writ). To assess the propriety of the "death penalty" sanctions, this Court "must be able to evaluate the trial court's ruling in light of the history of the litigation." *In re Le*, 335 S.W.3d 808, 813–14 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding).

We note that the record in this proceeding does not include transcripts from the June 11, 2021 hearing on the motion to compel or the July 9, 2021 hearing on the supplemental motion to compel. Neither Hizar nor Roofmasters attempted to supplement the record, argued that any portion of the record had been lost or destroyed under Texas Rule of Appellate Procedure 34.6(f), or designated a partial reporter's record under rule 34.6(c). *See* TEX. R. APP. P. 34. Without these portions of the record, we are left with an incomplete record on appeal. When confronted with an incomplete record, we presume the omitted portions are relevant to the appeal and the evidence contained within the omitted portions of the record support the trial court's judgment. *Imagine Auto. Grp.*, 430 S.W.3d at 632 (first citing *Davis v. Kaufman Cnty.*, 195 S.W.3d 847, 851 (Tex. App.—Dallas 2006, no pet.); and then citing *McFarland v. Szakalun*, 809 S.W.2d 760, 764 (Tex. App.—Houston [14th Dist.] 1991, writ denied)). With this in mind, we begin our review.

## B.    Applicable law

Discovery sanctions serve three purposes: (1) to secure the parties' compliance with the discovery rules; (2) to deter other litigants from violating the discovery rules; and (3) to punish parties who violate the discovery rules. *Response Time*, 95 S.W.3d at 659–60 (citing *McRae v. Guinn Flying Serv.*, 778 S.W.2d 189, 191 (Tex. App.—Houston [1st Dist.] 1989, no writ)). Although the choice of sanctions is left to the sound discretion of the trial court, the sanctions imposed must be just. *Id.* at 660. We measure the justness of a sanction by two standards. *Imagine*

*Auto. Grp.*, 430 S.W.3d at 633 (citing *TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding)). First, the sanctions must bear a direct relationship to the offensive conduct. *Id.* Second, the sanction must not be excessive. *Id.*

When a trial court imposes "death penalty" sanctions, we must ensure the sanction does not violate the party's due process rights. *See Imagine Auto. Grp.*, 430 S.W.3d at 633. A "death penalty" sanction does not offend due process when (1) the trial court first considers less severe sanctions before imposing "death penalty" sanctions, and (2) the offensive conduct justifies a presumption that the offending party's claims or defenses lack merit. *Id.* (first citing *Response Time, Inc.*, 95 S.W.3d at 660; and then citing *TransAm.*, 811 S.W.2d at 917–18).

### C. Application of law to facts

Here, Roofmasters and Hizar contend the sanctions meet none of these requirements. We disagree and will address each requirement in turn.

### 1. Relationship of sanctions to offensive conduct

Roofmasters and Hizar assert that the conduct for which they were sanctioned was producing redacted copies of responsive documents. According to Roofmasters and Hizar, they complied with the July 6 Order and July 9 Order by producing redacted banking records. They further argue the sanctions were not directly related to that conduct because the trial court's orders compelling production did not prohibit redaction. The record does not support these arguments.

–14–

First, the record shows Roofmasters and Hizar did not comply with the discovery orders. The July 6 Order required Roofmasters and Hizar to (1) prepare and serve "an adequate and truthful response, without objection," to specific requests for production, (2) produce documents and tangible things responsive to those specific requests for production, and (3) identify and produce a copy of any insurance policy as required by Rule 192.3(f) concerning responses to requests for disclosure. In the July 9 Order, the trial court made findings that (1) Roofmasters failed to comply with the "prior compel order" as to request for production numbers 6, 7, 39, 40, 41, and 56; and (2) Hizar failed to comply with the "prior compel order" as to request for production numbers 6, 7, 39, 41, 59, and 60. The trial court then ordered Hizar and Roofmasters "to produce all responsive documents" to the listed requests by Monday, July 12, 2021. The order further states "If Defendant fails to produce all responsive documents by Monday, July 12, 2021, Defendant's pleadings will be struck."

At trial, the Heflins told the court that (1) Hizar had produced "heavily redacted bank records where you could not see a single transaction," (2) Roofmasters had not produced a complete set of bank records, and (3) neither Hizar nor Roofmasters had produced a complete set of amended responses or any other responsive documents subject to the trial court's July 6 Order and July 9 Order. The trial court agreed and found in the final judgment that Roofmasters and Hizar failed to comply with the July 6 Order and July 9 Order. Without the transcripts of the June

–15–

11 and July 9 hearings, we must presume that the evidence contained within those transcripts supports the trial court's findings that Hizar and Roofmasters failed to comply with the July 6 Order and July 9 Order. *See Imagine Auto. Grp.*, 430 S.W.3d at 632.

As for the redaction issue, the July 6 Order and July 9 Order state that Hizar and Roofmasters could redact bank account numbers on responsive documents. The Heflins' counsel, however, reported at trial that they received documents from Hizar three days before trial that "were heavily redacted bank records where you could not see a single transaction. You could see a date and maybe an amount." Such redactions went well beyond the redaction of account numbers permitted by the trial court and, thus, did not comply with the July 6 Order or the July 9 Order. Moreover, without transcripts of the prior hearings, we must presume that the trial court anticipated and allowed only limited redaction of bank account numbers and sensitive data as defined in Rule 21c. *See Imagine Auto. Grp.*, 430 S.W.3d at 632.

Under this record, we conclude the sanctions were directly related to the offensive conduct because Roofmasters and Hizar's failure to comply with two discovery orders impeded the Heflins' ability to prepare their case as to their claims and the counterclaims asserted against them. By striking their pleadings, the trial court punished that conduct and resolved the prejudice to the Heflins caused by the conduct.

### 2.    Excessiveness of sanction

We next examine whether the death penalty sanction was excessive. A sanction should be no more severe than necessary to satisfy its legitimate purpose. *TransAm.*, 811 S.W.2d at 917; *see also Blackmon*, 841 S.W.2d at 849 (noting that the legitimate purposes of a sanction include securing compliance, deterring other litigants from similar misconduct, and punishing violators). In other words, "[t]he punishment should fit the crime . . . . courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *TransAm.*, 811 S.W.2d at 917.

Roofmasters and Hizar maintain that striking their pleadings was an excessive sanction because they did not receive proper notice of the supplemental motion to compel and a hearing on the motion, a lesser sanction could have sufficed, and the discovery requests were not proper. We disagree.

As a preliminary matter, the record does not support the assertions that Roofmasters and Hizar did not receive proper notice of the hearing on the July 9 supplemental motion to compel and did not receive the benefits of a hearing. The Heflins filed and served a notice of hearing for the July 9 hearing on June 16, 2021, and counsel for Roofmasters and Hizar appeared at the July 9 hearing. These allegations lend no support to Roofmasters and Hizar's contention that the sanction was excessive.

Roofmasters and Hizar also argue that the discovery requests were relevant only to the Heflins' alter ego claims and, therefore, an appropriate lesser sanction would have been for the trial court to make a finding deeming Roofmasters and Hizar alter egos of each other. The trial court was not required to "test the effectiveness of lesser sanctions by actually implementing and ordering each and every sanction that could possibly be imposed before striking the pleadings of a disobedient party." *Cire v. Cummings*, 134 S.W.3d 835, 842 (Tex. 2004). Moreover, the Heflins asserted that the discovery requests at issue were relevant to more than the alter ego claims. The suggestion that making an alter ego finding would have been a viable, lesser sanction is not supported by the record.

Roofmasters and Hizar also assert that the discovery requests were not proper because "the record is clear that the corporate veil did not need to be pierced at all." Although Roofmasters and Hizar objected to the discovery requests at issue on relevance grounds, the trial court overruled their objections and twice ordered production of responsive documents. Yet Roofmasters and Hizar failed to comply with those orders. The trial court heard the arguments of counsel, reviewed the discovery requests, and overruled the objections to the discovery requests at issue. We cannot say, under the record before us, that the trial court's action was without reference to guiding rules and principles or was arbitrary and unreasonable. *See Altus Commc'ns, Inc. v. Meltzer & Martin, Inc.*, 829 S.W.2d 878, 884 (Tex. App.—Dallas 1992, no writ). And even assuming the requests had only limited relevance,

–18–

Roofmasters and Hizar fail to explain why striking their pleadings was more severe than necessary to satisfy the legitimate purposes of securing compliance, punishing their malfeasance, and deterring other litigants from similar misconduct.

Multiple violations of the discovery rules and court orders for discovery may be a factor authorizing imposition of sanctions such as striking pleadings and the entry of a default judgment, even when the offending party offers justification and excuses. *Altus Commc'ns*, 829 S.W.2d at 884 (citing *Med. Protective Co. v. Glanz*, 721 S.W.2d 382, 388 (Tex. App.—Corpus Christi–Edinburg 1986, writ ref'd)). We conclude Roofmasters and Hizar's failure to comply with two orders compelling discovery despite an award of attorney's fees against them and the threat of death penalty sanctions in the second order supports a conclusion that the sanctions were not excessive.

### 3. Consideration of lesser sanctions

Next, Roofmasters and Hizar contend the sanctions must be vacated because the trial court did not consider lesser sanctions. Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that the party's claims or defenses lack merit. *TransAm.*, 811 S.W.2d at 918. However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the trial court may presume that an asserted claim or defense lacks merit and dispose of it. *Id.*

The record shows the trial court previously imposed lesser sanctions in the July 9 Order when it granted the Heflins' supplemental motion to compel discovery and ordered Hizar and Roofmasters to pay the Heflins' attorney's fees in an amount to be determined.[7] *See Davenport v. Scheble*, 201 S.W.3d 188, 194 (Tex. App.—Dallas 2006, pet. denied) (lesser sanctions were previously imposed by granting motion to compel and awarding fees to movant). The decision to determine the amount of a fee award later does not change our analysis because only the amount owed was left pending, and the order unequivocally orders Roofmasters and Hizar to pay reasonable attorney's fees as part of the order granting the supplemental motion to compel.

Moreover, the July 9 Order warned Roofmasters and Hizar that their pleadings would be struck if they failed to produce responsive documents by July 12, 2021. "An order to compel discovery, standing alone, does not constitute the type of lesser sanction which must be imposed prior to a trial court's imposition of ultimate sanctions." *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 539 (Tex. App.—San Antonio 2004, pet. denied) (citing *Bair v. Hagans*, 838 S.W.2d 677, 681 (Tex. App.—Houston [1st Dist.] 1992, writ denied)). "However, an order to compel discovery joined with a statement by the court that noncompliance with the order would result in dismissal **does** constitute the type of lesser sanction which

---

[7] The July 9 Order does not include the amount of attorney's fees Roofmasters and Hizar were ordered to pay the Heflins. In place of a dollar amount, the trial court inserted the word "PENDING."

must be imposed prior to a trial court's imposition of an ultimate sanction." *Id.* (emphasis added) (citing *Jaques v. Tex. Emps.' Ins. Ass'n*, 816 S.W.2d 129, 131 (Tex. App.—Houston [1st Dist.] 1991, no writ)). The July 9 Order in this case included the following unequivocal warning: "If Defendant fails to produce all responsive documents by Monday, July 12, 2021, Defendant's pleadings will be struck."

Eight of the fourteen intermediate appellate courts in Texas have considered and resolved the question of whether an unequivocal warning like the one at issue here constitutes a lesser sanction. Our sister courts in the First,[8] Third,[9] Fourth,[10]

---

[8] *Jaques v. Tex. Emps.' Ins. Ass'n.*, 816 S.W.2d 129, 131 (Tex. App.—Houston [1st Dist.] 1991, no writ) (holding death penalty sanctions appropriate where party was aware that pleadings would be stricken if he failed to comply with order); *Andras v. Mem'l Hosp. Sys.*, 888 S.W.2d 567, 570, 572–73 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (upholding as lesser sanction an order to compel coupled with warning that noncompliance would result in dismissal); *Jackson v. Jackson*, No. 01-05-00194-CV, 2006 WL 3438703, at *9 (Tex. App.—Houston [1st Dist.] Nov. 30, 2006, no pet.) (mem. op.) (holding trial court did not abuse discretion in issuing death penalty sanction where trial court cautioned that more serious sanction would issue unless party complied); *Romero v. Kroger Tex., L.P.*, No. 01-12-00049-CV, 2013 WL 6405477, at *4 (Tex. App.—Houston [1st Dist.] Dec. 5, 2013, no pet.) (mem. op.) (holding that trial court did not abuse discretion by dismissing claims where party failed to comply with order stating that if he failed to respond, "Plaintiffs' pleadings will be stricken.").

[9] *Hartbrich v. Vance*, No. 03-01-00635-CV, 2002 WL 31476889, at *3 (Tex. App.—Austin Nov. 7, 2002, no pet.) (not designated for publication) (stating "an order compelling discovery coupled with language that noncompliance can result in dismissal does constitute a lesser sanction.")

[10] *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 539 (Tex. App.—San Antonio 2004, pet. denied) (upholding as lesser sanction order that if party did not comply with order, its answer would be stricken).

–21–

Tenth,[11] Thirteenth,[12] and Fourteenth[13] Districts have each concluded that an unequivocal warning like the one in this case is a lesser sanction in and of itself. For example, in *HRN, Inc. v. Shell Oil Co.*, the trial court's first order compelling discovery required the dealers to respond fully to Shell's requests for production by August 21, 2000, and ordered certain plaintiffs to produce certain categories of documents by August 1, 2000. 102 S.W.3d at 217. On August 22, one day after the court-ordered deadline for the dealers to complete their discovery responses, Shell filed a motion to dismiss the claims of those dealers that had completely failed to respond to Shell's requests for production and interrogatories and to compel interrogatory responses and depositions from other dealers. *Id.* At a hearing on August 28, the trial court ordered the dealers to provide all requested documents and interrogatory answers by September 7, and further indicated that it would dismiss those who did not comply by that date. *Id.* The court of appeals concluded the second

---

[11] *Van Es v. Frazier*, 230 S.W.3d 770, 783 (Tex. App.—Waco 2007, pet. denied) (warning in second order stating that failure to comply would result in the striking of the party's pleadings was a lesser sanction)

[12] *Allied Res. Corp. v. Mo Vac Serv. Co., Inc.*, 871 S.W.2d 773, 779 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied) (holding order threatening death penalty sanction was unequivocal and self-executing).

[13] *Greer v. Martinez–Greer*, No. 14-00-00272-CV, 2001 WL 1340357, at *5 (Tex. App.—Houston [14th Dist.] November 1, 2001, no pet.) (not designated for publication) (stating that an order to compel with a warning that a failure to comply will result in trial court striking pleadings has been held to be in itself a lesser sanction); *HRN, Inc. v. Shell Oil Co.*, 102 S.W.3d 205, 218 (Tex. App.—Houston [14th Dist.] 2003), (concluding that second discovery order included a lesser sanction in the form of a warning that non-compliance would result in dismissal), *rev'd on other grounds*, 144 S.W.3d 429 (Tex. 2004); *Pryor v. State*, No. 14-05-00411-CV, 2006 WL 1528963, at *2 (Tex. App.—Houston [14th Dist.] June 6, 2006, no pet.) (mem. op.) ("The trial court instituted two lesser sanctions before striking appellant's pleadings. First, it imposed a one-hundred-dollar sanction, and second it warned that appellant's pleadings would be struck if he did not provide adequate responses.").

discovery order included a lesser sanction in the form of a warning that non-compliance would result in dismissal. *Id.* at 218.

Similarly, in *Andras v. Memorial Hospital System*, the trial court issued three orders to compel discovery before it struck a party's pleadings. 888 S.W.2d at 572. Those initial orders included no monetary penalties, attorney's fees, contempt, or other punishment; they just compelled discovery. *Id.* In the second order, the trial judge ordered that if they did not comply, their pleadings "may be stricken." *Id.* at 570. When the parties failed to produce the records as ordered, the trial judge issued the third order in which she again ordered them to comply and warned that she would strike their pleadings if her orders were again violated. *Id.* The court of appeals concluded the trial court imposed a lesser sanction before striking the pleadings when it ordered production and included a warning that noncompliance would result in dismissal. *Id.* at 572–73. The court held that "an order to compel coupled with a threat to dismiss for noncompliance is a lesser sanction within the meaning of *Chrysler v. Blackmon.*" *Id.* at 573. The *Andras* court concluded both the equivocal warning in the second order and the unequivocal warning in the third order were lesser sanctions. *Id.*

The courts of appeals in the Ninth and Twelfth Districts, in contrast, have concluded that such warnings are not lesser sanctions because they are only a threat to sanction, not a sanction outright. *In re Polaris Indus.*, 65 S.W.3d 746, 753 (Tex. App.—Beaumont 2001, orig. proceeding) (holding that "neither does a threat nor the

–23–

intent to sanction constitute a sanction" and, therefore, neither constitutes a lesser sanction); *Williams v. Akzo Nobel Chems., Inc.*, 999 S.W.2d 836, 844 (Tex. App.—Tyler 1999, no pet.) (although the order included a warning that noncompliance would result in dismissal, neither a threat to sanction, without more, nor the intent to sanction, is a sanction).

Although this Court has held that equivocal warnings of sanctions do not constitute a lesser sanction, we have not resolved the question presented here, i.e., whether an unequivocal warning constitutes a lesser sanction. *NRG & Assocs., LLC v. Serv. Transfer, Inc.*, No. 05-16-01375-CV, 2017 WL 6523396, at *4 n.7 (Tex. App.—Dallas Dec. 21, 2017, no pet.) (mem. op); *IKB Indus. (Nigeria) Ltd. v. Pro Line Corp.*, No. 05-94-00679-CV, 1997 WL 527266, at *4 (Tex. App.—Dallas Aug. 22, 1997, no writ) (op. on remand).

In *IKB Industries*, the trial court issued two orders compelling production by IKB before striking IKB's pleadings and dismissing its claims with prejudice. 1997 WL 527266, at *1–2. This Court rejected the suggestion made by Pro Line that certain "cautionary" language in the trial court's dismissal order satisfied the requirement that the trial court test lesser sanctions before imposing death penalty sanctions. *Id.* at *4. Pro Line relied on *Andras* to support this contention. This Court concluded *Andras* was distinguishable because "the trial court's first two orders in this case did not state the court would dismiss the pleadings if IKB failed to comply." *Id.*

–24–

In *NRG & Associates*, the trial court signed a mediation order that required the parties to participate in a mediation. 2017 WL 6523396, at *1. The mediation order warned that "[f]ailure or refusal to attend the mediation as scheduled may result in the imposition of sanctions, as permitted by law, which may include dismissal or default judgment." *Id.* After NRG failed to attend mediation, Service Transfer filed a motion for sanctions. *Id.* at *2. The trial court granted the motion for sanctions. *Id.* The sanctions order awarded Service Transfer $3,184.85 in attorney's fees and other expenses incurred in attending the mediation and provided that, as an additional sanction, judgment would be rendered in favor of Service Transfer against NRG in "[a] form of Final Judgment [to] be entered separately by the Court." *Id.* The separately rendered judgment stated that the trial court had "sanctioned [NRG] for its failure to attend [c]ourt ordered mediation." *Id.* On appeal, this Court concluded the trial court did not first test a lesser sanction before imposing the death penalty sanction because the monetary sanction against NRG was imposed simultaneously with the death penalty sanction. *Id.* at *4.

The July 9 Order in this case included the following unequivocal warning: "If Defendant fails to produce all responsive documents by Monday, July 12, 2021, Defendant's pleadings will be struck." That language distinguishes the July 9 Order from the orders in *NRG & Associates* and *IKB Industries*. Unlike the warnings in those cases, the warning in the July 9 Order is unequivocal. We conclude the warning in the July 9 Order is akin to orders the majority of our sister courts have concluded

were lesser sanctions. We adopt the rule applied by our sister courts and hold an order compelling discovery coupled with unequivocal language that noncompliance will result in dismissal constitutes a lesser sanction.

Further, the final judgment states that the trial court struck the pleadings "after considering the severity of lesser sanctions and availability of less stringent sanctions, and whether such sanctions would fully promote [Roofmasters and Hizar] to comply with the Texas Rules of Civil Procedure and this Court's orders regarding discovery." The judgment language further supports our conclusion that the trial court considered lesser sanctions before striking Roofmasters and Hizar's pleadings. *See Davenport*, 201 S.W.3d at 194 (trial court's reference to the prior order compelling discovery and indicating it was ineffective in the order imposing the death penalty sanctions, shows the trial court considered the availability of lesser sanctions and whether they would promote full compliance). Under this record, we conclude the trial court considered the availability of lesser sanctions and whether they would promote full compliance before striking Roofmasters and Hizar's pleadings.

### 4. Presumption that claims lack merit

Finally, we consider whether the conduct justified a presumption that the claim was without merit. Multiple violations of the discovery rules and court orders for discovery may be a factor authorizing imposition of sanctions such as striking pleadings and the entry of a default judgment, even when the offending party offers

justification and excuses. *See Altus Commc'ns*, 829 S.W.2d at 884 (citing *Glanz*, 721 S.W.2d at 388). The Texas Supreme Court has upheld the trial court's actions of striking pleadings and rendering default judgment for failure to produce deponents and documents. *See Vasquez v. Chem. Exch. Indus.*, 721 S.W.2d 284, 285 (Tex. 1986); *see also Plano Sav. & Loan Ass'n v. Slavin*, 721 S.W.2d 282, 283–84 (Tex. 1986) (per curiam).

Here, the trial court gave Roofmasters and Hizar two chances to comply with the discovery rules and the trial court's discovery orders. But they persistently failed to comply with those orders and respond to the Heflins' legitimate discovery requests. The trial court only imposed the sanctions that precluded Roofmasters and Hizar from presenting a defense after they ignored two prior court orders "in callous disregard for the responsibilities of discovery under the rules." *TransAm.*, 811 S.W.2d at 918. The court attempted lesser sanctions that failed to effectuate compliance. Thus, the court was justified in assuming that their defenses lacked merit. *See Van Es*, 230 S.W.3d at 783–84; *see also Palisades Collection, LLC v. Coleman*, No. 04-08-00684-CV, 2009 WL 2882940, at *3 (Tex. App.—San Antonio Sept. 9, 2009, no pet.) (mem. op.).

We cannot say, under the record before us, that the trial court's action was without reference to guiding rules and principles. Nor can we say that the trial court's act was arbitrary and unreasonable. We hold the record does not show a clear abuse

of the trial court's discretion. *See TransAm.*, 811 S.W.2d at 917. Accordingly, we overrule Roofmasters and Hizar's second issue.

## II.    Damages Awarded

In their first and seventh issues, Hizar and Roofmasters challenge the trial court's award of damages to the Heflins. First, they argue the money judgment constitutes a double recovery and violates the one satisfaction rule because the Heflins purportedly suffered no compensable harm. Second, they contend the judgment violates the economic loss rule.

### A.    Standard of review

We apply the same standards of review to a trial court's findings as we apply to a jury verdict. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009) (same standards of review that apply to a jury verdict apply to review of a trial court's findings) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)). When conducting a factual sufficiency review as to the amount of damages and related findings of fact, we examine the entire record and set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *In re Zimmer, Inc.*, 451 S.W.3d 893, 905–06 (Tex. App.—Dallas 2014, orig. proceeding) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001)); *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 722 (Tex. App.—Dallas 2011, pet. denied) (the question is whether the adverse finding is against the great weight and preponderance of the evidence). We apply de

–28–

novo review to whether the Heflins suffered compensable harm and related conclusions of law. *Wyde v. Francesconi*, 566 S.W.3d 890, 894–95 (Tex. App.—Dallas 2018, no pet.) (de novo review of conclusions of law). When an appellant challenges the legal sufficiency of an adverse finding on which he did not have the burden of proof at trial, he must demonstrate there is no evidence to support the adverse finding. *Id.* at 894.

### B.     One satisfaction rule

According to Hizar and Roofmasters, the Heflins' payments to Hizar and Roofmasters plus their payment to JMS to finish the job was less than the original contract price with Hizar and Roofmasters. Under this theory, the Heflins paid $350 less than they agreed to pay Hizar and Roofmasters and received the smooth ceilings they bargained for even though Hizar and Roofmasters walked off the job. They contend the judgment violates the one satisfaction rule because it "provided two satisfactions for the same alleged injury" by allowing the Heflins to receive the smooth ceiling bargained for and a refund for that work.

A party is generally entitled to pursue damages through alternative theories of recovery. *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam); *Benge Gen. Contracting, LLC v. Hertz Elec., LLC*, No. 05-19-01506-CV, 2021 WL 5317840, at *6 (Tex. App.—Dallas Nov. 16, 2021, no pet.) (mem. op.). "[A] judgment awarding damages on each alternate theory may be upheld if the theories depend on separate and distinct injuries and if separate and

–29–

distinct damages findings are made as to each theory." *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.,* 417 S.W.3d 46, 64 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Under the one satisfaction rule, however, a plaintiff may recover only once for a particular injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000); *Allan v. Nersesova*, 307 S.W.3d 564, 574 (Tex. App.—Dallas 2010, no pet.). The rule applies when a defendant commits technically differing acts that result in a single injury. *Casteel*, 22 S.W.3d at 390; *Allan*, 307 S.W.3d at 574. The fact that there may be more than one theory of liability does not modify this rule. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991); *Allan*, 307 S.W.3d at 574. Whether the rule applies is determined not by the cause of action, but by the injury. *See Sterling*, 822 S.W.2d at 7–8.

Here, the trial court awarded the Heflins $8,250.00 in damages. The judgment does not state under which theory of recovery it awarded the damages. The court's findings of fact and conclusions of law, however, state that the court found in favor of the Heflins on each cause of action and determined they suffered economic damages of $8,250.00 regardless of the cause of action. The trial court's conclusions of law related to the Heflins' DTPA, breach of implied warranty, and breach of express warranty claims state the economic damages of $8,250.00 included "the amounts paid for the defective work and the the [sic] reasonable and necessary cost to repair and complete Defendants' defective and incomplete Work." The conclusions of law concerning the Heflins' breach of contract, negligence, and

negligent misrepresentation claims state the economic damages of $8,250.00 were "the reasonable and necessary cost to repair and complete Defendants' defective and incomplete Work."

According to the Heflins, they incurred out-of-pocket damages of $4,750 "for monies wasted on Appellants[sic] expected services," and benefit-of-the-bargain damages of $3,500 "for the amount it took repair the damages Appellants inflicted and complete the job Appellants abandoned." The Heflins concede that they cannot recover both out-of-pocket and benefit-of-the-bargain damages in a DTPA action. *See Latham v. Burgher*, 320 S.W.3d 602, 611 (Tex. App.—Dallas 2010, no pet.). They contend in part, however, that the $8,250.00 damages award is proper here and should be affirmed because the work performed by Roofmasters and Hizar was of zero value to them. We agree.

Under any of the theories of liability involved, the value of any goods and services provided by Roofmasters and Hizar factors into the measure of damages. *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (fraud damages are measured under either out-of-pocket measure or benefit-of-the-bargain measure; either requires proof of value received); *Zhu v. Lam*, 426 S.W.3d 333, 339 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (damages under DTPA are either out-of-pocket damages or benefit-of-the-bargain damages); *Brown v. Ogbolu*, 331 S.W.3d 530, 536 (Tex. App.—Dallas 2011, no pet.) (normal measure of damages for breach of contract is benefit-of-the-bargain measure, which seeks to restore

plaintiff to economic position it would have been in had contract been performed). A plaintiff may claim the full amount paid for services only if he received performance that was worthless. *TexPro Constr. Grp., LLC v. Davis*, No. 05-14-00050-CV, 2015 WL 4984856, at *4 (Tex. App.—Dallas Aug. 19, 2015, no pet.) (mem. op.) (first citing *Smith v. Kinslow*, 598 S.W.2d 910, 913–14 (Tex. App.—Dallas 1980, no writ); then citing *Latham*, 320 S.W.3d at 610–11) (jury could have rationally believed roofing company's repairs had no value to homeowner); and then citing *Mays v. Pierce*, 203 S.W.3d 564, 578 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (in bench trial, court could have found that mold and water remediation services were of zero value)). Here, the evidence at trial supports a finding that Roofmasters and Hizar's work provided no value to the Heflins. That evidence included the testimony of the Heflins and photographs showing the shoddy and incomplete work and additional damage caused by that work. Under this record, we conclude the Heflins established economic damages of at least $8,250.00 and the judgment does not violate the one satisfaction rule. We overrule the first issue.

### C. Economic loss rule

In their seventh issue, Roofmasters and Hizar argue the economic loss rule bars the Heflins from recovering on their tort claims because "this is a straight breach of contract case." We disagree. The economic loss rule "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual

–32–

expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam). Here, the Heflins' contract claim is not one and the same as their warranty claims and DTPA claim.

For example, an express warranty claim "involve[s] something more than a mere promise to perform under the contract." *Lopez v. Metro Lumber Indus., Inc.*, No. 05-13-01048-CV, 2014 WL 2807973, at *1 (Tex. App.—Dallas June 18, 2014, no pet.) (mem. op.) (quoting *Staton Holdings, Inc. v. Tatum, L.L.C.*, No. 05–12–01408–CV, 2014 WL 2583668, at *2 (Tex. App.—Dallas June 10, 2014, pet. denied) (mem. op.)). Here, the Heflins' warranty claim is based on Roofmasters and Hizar's delivery of defective work that was not performed with due diligence and good workmanship as warranted. Such delivery gave rise to a breach of warranty claim, as distinct from a breach of contract claim. S*ee CExchange, LLC v. Top Wireless Wholesaler*, No. 05-17-01318-CV, 2019 WL 3986299, at *7–8 (Tex. App.—Dallas Aug. 23, 2019, pet. denied) (mem. op.) (first citing *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 896–97 (Tex. App.—San Antonio 2002, no pet.); and then citing *Med. City Dall., Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex. 2008)).

As for the DTPA claim, "a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (per curiam) (citation and internal quotation marks omitted); *see also Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493,

494 (Tex. 1991) ("[I]f the defendant's conduct . . . would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract."). Here, the Heflins' DTPA claim is not based on a failure to perform duties imposed by the contract, but instead on the breach of an independent duty imposed by law not to make knowing misrepresentations to induce the Heflins to enter the contract. *Dall. Fire Ins. Co. v. Tex. Contractors Sur. & Cas. Agency*, 128 S.W.3d 279, 293–94 (Tex. App.—Fort Worth 2004), *rev'd on other grounds*, 159 S.W.3d 895 (Tex. 2004) (per curiam) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998)). Such allegations would give rise to liability independently of whether a contract exists between the parties and may, therefore, sound in tort. *Dall. Fire Ins. Co.*, 128 S.W.3d at 293–94; *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 & n.15 (Tex. 2006) (citing TEX. BUS. & COM. CODE § 17.46(b)(7), (b)(24)). Moreover, the economic loss rule does not bar the Heflins' DTPA claims. *Dallas Fire Ins. Co.*, 128 S.W.3d at 293–94; *see also Formosa Plastics*, 960 S.W.2d at 47 ("[T]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract."). For these reasons, we overrule Roofmasters and Hizar's seventh issue.

## III.   Attorney's Fees

In their third through sixth issues, Hizar and Roofmasters challenge the award of attorney's fees to the Heflins. For the following reasons, we affirm the awards of fees for work done in the trial court through trial and reverse the awards of conditional post-trial and appellate fees.

### A.   Availability of fees

Roofmasters and Hizar first argue that the trial court erred by awarding the Heflins attorney's fees because the fees were not premised on a monetary recovery. The determination of whether attorney's fees are available in a particular case is a question of law, which we review de novo. *See*, *e.g.*, *Cent. Forest S/C Partners, Ltd. v. Mundo–Mundo, Inc.*, 184 S.W.3d 296, 299 (Tex. App.—Dallas 2005, no pet.) (citing *Holland v. Wal–Mart Stores*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam)). "Absent a mandatory statute, a trial court's jurisdiction to render a judgment for attorney's fees must be invoked by pleadings, and a judgment not supported by pleadings requesting an award of attorney's fees is a nullity." *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877 (Tex. App.—Dallas 2009, no pet.).

An award of attorney's fees is mandatory to the claimant who prevails on a DTPA claim or statutory fraudulent lien claim. TEX. BUS. & COM. CODE § 17.50(d) (DTPA); TEX. CIV. PRAC. & REM. CODE § 12.002(b)(3) (fraudulent lien). Here, the Heflins prevailed on their DTPA and fraudulent lien claims and were awarded actual

–35–

damages on those claims, which we have affirmed above. The trial court was, therefore, without discretion to deny the Heflins' request for statutorily-mandated fees. Under this record, the trial court did not abuse its discretion by awarding the Heflins attorney's fees through trial. We overrule Roofmasters and Hizar's third issue.

## B. Reasonableness and necessity of fees

In their fourth issue, Roofmasters and Hizar contend the Heflins failed to prove the reasonableness and necessity of the fees awarded. We disagree.

### 1. Standard of review

A trial court's decision to award attorney's fees is reviewed for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012); *Shamim v. Cantera Owners Ass'n, Inc.*, No. 05-21-00274-CV, 2022 WL 4480565, at *2 (Tex. App.—Dallas Sept. 27, 2022, no pet.) (mem. op.). When reviewing a trial court's award of attorney's fees, we must ensure the record contains sufficient evidence to support such an award. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 505 (Tex. 2019) (concluding the record lacked sufficient evidence to support the trial court's award of attorney's fees). The party seeking attorney's fees bears the burden of proof and must supply enough facts to support the reasonableness of the amount awarded. *El Apple I, Ltd.*, 370 S.W.3d at 762–63. If there is insufficient evidence in the record to uphold the trial court's award of those

fees, we must reverse. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020).

We review the amount of a fee award for legal sufficiency. *Rohrmoos Venture*, 578 S.W.3d at 490. When reviewing a legal sufficiency challenge, "we must view the evidence in a light that tends to support the disputed finding and disregard evidence and inferences to the contrary." *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (citing *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001)). A legal sufficiency or "no evidence" point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Scott Pelley P.C. v. Wynne*, 578 S.W.3d 694, 701–02 (Tex. App.—Dallas 2019, no pet.). Evidence that is no more than a scintilla "in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the evidence supporting the finding "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Kroger Tex., Ltd. P'ship v. Suberu*, 216 S.W.3d 788,

793 (Tex. 2006) (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

### 2. Applicable law

Texas uses the "lodestar method," which is essentially a "short hand version" of the *Arthur Andersen* factors, to determine reasonable and necessary attorney's fees. *Rohrmoos Venture*, 578 S.W.3d at 496; *see Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Under the lodestar method, the factfinder must first determine the reasonable hours spent by counsel and the reasonable hourly rate for counsel's work. *El Apple I, Ltd.*, 370 S.W.3d at 760. The factfinder then multiplies the number of hours counsel worked on the case by the applicable rate to determine the base fee or lodestar. *Id.* The base fee is presumed to reflect the reasonable and necessary attorney's fees. *Rohrmoos Venture*, 578 S.W.3d at 499. The factfinder may adjust the lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.* at 500–01.

A party seeking attorney's fees "bears the burden of providing sufficient evidence" of both the reasonable hours worked and a reasonable hourly rate. *Rohrmoos*, 578 S.W.3d at 498. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *Id.* "General, conclusory testimony devoid of any real

substance will not support a fee award." *Id.* at 501. "Thus, a claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought." *Id.* at 501–02. Contemporaneous billing records are not required to prove the requested fees are reasonable and necessary, but they "are strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested." *Id.* at 502.

### 3. Application of law to facts

Before trial, the Heflins filed the affidavit of its counsel, Kate Valent, to support their request for attorney's fees. Valent also testified at trial concerning fees, and the trial court admitted detailed billing records into evidence from Valent and the other legal staff who billed time on the case on behalf of the Heflins. Roofmasters and Hizar contend this evidence was insufficient to support the award of $29,249.00 in attorney's fees because Valent made only conclusory statements concerning the reasonableness and necessity of the fees requested and presented no evidence of the *Arthur Andersen*[14] factors.

---

[14] The *Arthur Andersen* factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen*, 945 S.W.2d at 818.

Roofmasters and Hizar rely on *Porter v. A-1 Parts*, No. 05-17-01468-CV, 2019 WL 181015 (Tex. App.—Dallas Jan. 14, 2019, no pet.) (mem. op.) to support their contention the evidence was insufficient to support the fees award here. *Porter* is distinguishable, however, because the only evidence of fees admitted in that case was an attorney's fees invoice. *Id.* at *2. Neither Porter nor his attorney testified to the reasonableness and necessity of the fees reflected in the invoice. *Id.* We rejected Porter's argument that he was not required to offer evidence of the reasonableness and necessity of his attorney's fees because the attorney's fee invoice was admitted into evidence without objection, and an award of fees was mandatory under the DTPA. *Id.* at *3.

Here, in contrast, Valent presented detailed billing records to prove up the fees requested and testified via affidavit and as a witness at trial concerning the reasonableness and necessity of those fees. In her affidavit, Valent described in detail her experience litigating construction defect and breach of contract lawsuits in North Texas. She stated she was familiar with the customary charges for attorney's fees practicing in Collin County for work relating to this type of lawsuit. She set out the hourly rates charged by her and two associate attorneys in this matter and concluded the hourly rates charged were reasonable hourly rates given each attorney's experience level. She also concluded the rates charged were the usual and customary rates for the same or similar services rendered by attorneys with similar experience, qualifications, and reputations in Collin County, Texas. Valent also stated that she

considered all of the *Arthur Andersen* factors when preparing the affidavit and assessing the reasonableness and necessity of the fees charged and requested.

During her trial testimony, Valent expounded on the opinions included in her affidavit. She reiterated the hourly rates charged by her and her associates and testified that her law firm had billed 102.7 hours from the inception of the case through trial. She testified that the fees requested were reasonable and necessary because of "the extensive discovery disputes in this case, and defendants' refusal to produce documents and several hearings we had to have in that regard." She also explained the other tasks counsel were required to engage in to successfully prosecute the case. Those tasks included responding to discovery, producing documents, preparing a docket control order, preparing for trial before the original trial date, responding to Roofmasters' intervention, conducting additional discovery related to the intervention, responding to motions filed by opposing counsel, preparing the Heflins' motion to enforce sanction and for default judgment, and preparing for and participating in trial. The billing records admitted into evidence confirmed the rates charged and hours worked on the case, included detailed descriptions of the work done, and corroborated Valent's testimony. Valent asked the trial court to award the Heflins $29,249.00 in attorney's fees through trial. The trial court awarded the Heflins' attorney's fees of $29,051.88[15] through trial.

_____

[15] Roofmasters and Hizar note in their brief that the trial court's findings of fact and conclusions of law include a conclusion of law stating that the Heflins are entitled to recover reasonable and necessary

Under this record, we conclude the evidence showed the reasonable hours worked by the Heflins' legal team and the reasonable hourly rates of that team. The evidence was, therefore, legally sufficient to support the amount of fees awarded through trial. We overrule Roofmasters and Hizar's fourth issue.

## C.    Segregation of fees

In their sixth issue, Roofmasters and Hizar argue the award of fees should be reversed because the Heflins did not segregate the fees requested between fees incurred on claims for which fees are recoverable and fees incurred on claims for which the recovery of fees is not permitted.

"Texas follows the American Rule and permits a party to recover attorney's fees only if provided by a contract or statute." *Hejin Hong v. Nations Renovations, LLC*, No. 05-15-01036-CV, 2016 WL 7473900, at *6 (Tex. App.—Dallas Dec. 29, 2016, pet. denied) (mem. op.) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006)). When claims allowing recovery of fees are brought with claims that do not, any attorney's fees relating solely to a claim for which fees are not recoverable must be segregated from the fees relating to

---

attorney's fees in the amount of $28,000. When findings of fact and conclusions of law differ from a judgment, "the findings of fact and conclusions of law control absent objections being filed." *Morgan Keegan & Co., Inc. v. Purdue Ave. Inv'rs LP*, No. 05-15-00369-CV, 2016 WL 2941266, at *8 (Tex. App.—Dallas May 18, 2016, pet. denied) (mem. op.) (quoting *Sw. Craft Ctr. v. Heilner*, 670 S.W.2d 651, 655 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.) (findings and conclusions filed after judgment are controlling in event of conflict)). Roofmasters and Hizar do not, however, challenge the judgment based on this conflicting conclusion of law and do not argue the judgment should be modified to reflect fees of $28,000. We, therefore, decline to address whether the award of fees should be reduced to $28,000. Moreover, any available objection was waived because they did not object in the trial court.

recoverable claims. *Chapa*, 212 S.W.3d at 313. Intertwined facts do not allow recovery of unrecoverable fees; "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. Legal services that would have been incurred on a recoverable claim are not disallowed simply because the services also further non-recoverable claims. *Id.* Further, fees incurred to "overcome any and all affirmative defenses" or to defend against a counterclaim that must be overcome to fully recover on the claim allowing fees do not require segregation. *See Varner v. Cardenas*, 218 S.W.3d 68, 69–70 (Tex. 2007) (per curiam); *Chapa*, 212 S.W.3d at 314.

"A failure to segregate attorney's fees in a case containing multiple causes of action, only some of which entitle the recovery of attorney's fees, can result in the recovery of zero attorney's fees." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). "However, if no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived." *Id.* In other words, objections to the alleged failure to segregate fees can be waived. *Id.* (error was waived where party did not object to failure to segregate fees between different projects and various claims and defenses in the jury question regarding fees) (citing *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988)); *Rhodes v. Kelly*, No. 05-16-00888-CV, 2017 WL 2774452, at *14 (Tex. App.—Dallas 2017, pet. denied) (mem. op.) (party waived error on attorney's fees issues, including segregation of fees, by failing to address issue in motion for new trial or other

proceedings in trial court); *Morey v. Page*, 802 S.W.2d 779, 785 (Tex. App.—Dallas 1990, no pet.) (despite party's objection to the jury question on attorney fees, party waived error by failing to object on the ground that question failed to provide for segregation of attorney fees).

Here, neither Hizar nor Roofmasters raised an objection in the trial court concerning segregation of fees. As such, their challenge to the trial court's segregation of fees is not preserved for this Court's review on appeal. *See Rhodes*, 2017 WL 2774452, at *14 (holding that challenge to fee segregation on appeal was waived where no objection was made before trial court or in later post-judgment motions). We overrule Roofmasters and Hizar's sixth issue.

## D. Conditional post-trial and appellate fees

In their fifth issue, Roofmasters and Hizar challenge the trial court's award of conditional post-trial and appellate attorney's fees. They contend the Heflins did not plead for or prove the amount of conditional post-trial and appellate fees awarded to them. They also assert the Heflins "did not spend attorney time drafting or filing a response, and no hearing occurred." The record belies these assertions. The Heflins' first amended petition specifically requests attorney's fees "through time of trial, together with an additional conditional award for any appeal." As for post-trial matters, the Heflins filed a six-page response to the motion for new trial. We, therefore, overrule this issue as to any claim the Heflins failed to plead for conditional fees.

–44–

The challenge to the sufficiency of the evidence to support conditional fees is a different matter. When reviewing a trial court's award of attorney's fees, we must ensure the record contains sufficient evidence to support such an award. *Yowell*, 620 S.W.3d at 354. The party seeking attorney's fees bears the burden of proof and must supply enough facts to support the reasonableness of the amount awarded. *Id.* If there is insufficient evidence in the record to uphold the trial court's award of those fees, we must reverse. *Id.*

When a trial court awards conditional appellate attorney's fees, an appeal is still hypothetical. *Id.* at 355. There is no certainty regarding who will represent the appellee on appeal, what counsel's rate will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise. *Id.* This uncertainty, however, does not excuse a party seeking to recover conditional appellate fees from the need to provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services. *Id.*

Valent submitted an affidavit in support of attorney's fees before trial and testified at trial concerning fees. At trial, Valent did not address conditional appellate fees. In her affidavit, however, she stated the following:

> 8. In addition to my trial practice, I have practiced before courts of appeals in the State of Texas. I have handled cases with board certified and/ or appellate specialists and I am generally familiar with the costs to handle appeals in this type of suit. Based on my experience and training and in my professional opinion, the sum of $20,000.00 is a

–45–

reasonable and necessary fee should Plaintiffs prevail on any appeal to the Dallas Court of Appeals. In addition, the sum of $10,000.00 is a reasonable and necessary fee for making or responding to a petition for review filed with the Texas Supreme Court. Furthermore, the sum of $15,000.00 is a reasonable and necessary fee in the event a petition for review is granted and briefing is filed and arguing any petition with the Texas Supreme Court.

The judgment awarded conditional appellate fees to the Heflins in the amounts requested by Valent in the affidavit.

Valent's testimony does not identify the services she reasonably believes will be necessary to defend the appeal. Nor does she identify a reasonable hourly rate for performance of any of those services. We conclude, therefore, that the Heflins' evidence of conditional appellate attorney's fees is legally insufficient. *See, e.g.*, *Canadian Real Estate Holdings, LP v. Karen F. Newton Revocable Tr.*, No. 05-20-00747-CV, 2022 WL 4545572, at *5–6 (Tex. App.—Dallas Sept. 29, 2022) (mem. op.), *decision clarified on denial of reh'g*, No. 05-20-00747-CV, 2023 WL 2909179 (Tex. App.—Dallas Apr. 12, 2023, no pet. h.) (mem. op.) (concluding similar affidavit testimony insufficient to support award of conditional appellate fees); *see also In re D.A.C.-R.*, No. 05-21-00033-CV, 2022 WL 2302172, at *10 (Tex. App.—Dallas June 27, 2022) (mem. op.), *judgment set aside, opinion not vacated*, No. 05-21-00033-CV, 2022 WL 2737752 (Tex. App.—Dallas July 14, 2022, pet. denied) (supp. mem. op.) (attorney's affidavit stating that specified estimated amounts for handling each phase of an appeal are reasonable and necessary was insufficient to support the award of appellate attorney's fees).

The Heflins ask this Court to remand for a new trial on conditional appellate fees should we conclude the evidence presented below was legally insufficient to support the award. They provide no argument concerning why remand is appropriate here. Rather, they simply cite *McLeod v. Gyr*, 439 S.W.3d 639, 653 (Tex. App.—Dallas 2014, pet. denied) for the proposition that remand may be ordered to determine appellate fees. In *McLeod*, Bruce B. McLeod III appealed a post-answer default judgment rendered against him on Alfred Gyr's claims for deceptive trade practices and breach of fiduciary duty. *Id.* at 643. We reversed the award of conditional appellate fees to Gyr because he presented no evidence of such fees in the trial court. *Id.* at 653. Because Gyr prevailed on the DTPA claim in the trial court and on appeal, however, we remanded for a new trial to determine the amount of appellate attorney's fees to award him. *Id.* (noting that a consumer who prevails on a DTPA claim "shall be awarded costs and reasonable and necessary attorney's fees.") (quoting Tex. Bus. & Com. Code § 17.50(d)). The same analysis applies here.

The Heflins pleaded for appellate attorney's fees and prevailed on all their claims, including their DTPA and fraudulent lien claims for which an award of attorney's fees to the prevailing claimant is mandatory. Tex. Bus. & Com. Code § 17.50(d) (DTPA); Tex. Civ. Prac. & Rem. Code § 12.002(b)(3) (fraudulent lien). Attorney's fees were also recoverable for their breach of contract claim. Tex. Civ. Prac. & Rem. Code § 38.001(b). Because attorney's fees were authorized but the

evidence was insufficient under *Yowell* and *Rohrmoos* to support the amounts awarded, the proper remedy is to reverse the awards of conditional appellate fees and remand the issue of appellate attorney fees to the trial court for redetermination. *See Rohrmoos Venture*, 578 S.W.3d at 506 (remanding for redetermination of fees after concluding evidence is legally insufficient to support attorney fee award); *see also In re D.A.C.-R.*, 2022 WL 2302172, at *13 (remanding for further proceedings on conditional appellate fees despite insufficient evidence to support fees awarded in the judgment); *Apple Tex. Rests., Inc. v. Shops Dunhill Ratel, LLC*, No. 05-20-01052-CV, 2022 WL 883907, at *6–7 (Tex. App.—Dallas Mar. 25, 2022, pet. denied) (mem. op.) (same); *Ruff v. Ruff*, No. 05-21-00157-CV, 2022 WL 420353, at *11 (Tex. App.—Dallas Feb. 11, 2022, pet. denied) (mem. op.) (same).[16]

In addition to the award of conditional appellate fees, the final judgment included a conditional award of $5,000 in attorney's fees to the Heflins for responding to any post-judgment motions filed by Roofmasters and Hizar and denied by the trial court. After denying Roofmasters and Hizar's motion for new trial, the trial court signed an order awarding the $5,000 in fees to the Heflins. Unlike the

---

[16] *See also In re L.A.M.*, No. 07-21-00124-CV, 2022 WL 1657885, at *9 (Tex. App.—Amarillo May 24, 2022, no pet.) (mem. op.) (reversing award of contingent appellate attorney's fees and remanding for redetermination of those fees); *Porter v. Porter*, No. 04-20-00229-CV, 2021 WL 2117923, at *5 (Tex. App.—San Antonio May 26, 2021, no pet.) (mem. op.) ("Because attorney's fees were authorized but the evidence was insufficient under *Rohrmoos* to support the amounts awarded, the proper remedy is to reverse the awards and remand the case for a new hearing on fees."); *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *20 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (mem. op.) (remanding for redetermination and entry of express award for appellate attorney's fees because such an award is mandatory under Rule 91a).

conditional appellate fees, however, the Heflins presented no evidence to the trial court to support an award of fees for responding to post-judgment motions. Nonetheless, we conclude the proper remedy is to reverse the fees award of $5,000 related to post-judgment fees and remand the issue of those fees to the trial court for redetermination. *See Rohrmoos Venture*, 578 S.W.3d at 506; *see also In re D.A.C.-R.*, 2022 WL 2302172, at *13.

We sustain Roofmasters and Hizar's fifth issue to the extent we reverse the awards of post-judgment and conditional appellate attorney's fees. We remand to the trial court for redetermination of those fees.

## IV.    Lien Removal

Finally, Hizar and Roofmasters challenge the trial court's September 11, 2020 order removing the property lien and award of fees to the Heflins related to their claim for lien removal. We review the lien removal de novo. *Precision Roofing, Inc. v. Zavelson*, No. 03-17-00550-CV, 2018 WL 5852680, at *3 (Tex. App.—Austin Nov. 9, 2018, no pet.) (mem. op.). We review the award of fees for an abuse of discretion. *Shamim*, 2022 WL 4480565, at *2.

At oral argument, the Heflins' counsel raised a jurisdictional question concerning the lien removal. Counsel asserted the trial court lacked subject matter jurisdiction to issue the order removing the lien and, therefore, this Court should vacate the September 11, 2020 order. We agree.

The trial court in this case, County Court at Law No. 7 of Collin County, is a statutory county court. TEX. GOV'T CODE § 25.0451(a)(7). As a general rule, statutory county courts have "jurisdiction over all causes and proceedings, civil and criminal, original and appellate, prescribed by law for [constitutional] county courts." *See id.* § 25.0003(a). However, the legislature has removed certain civil matters from constitutional county courts' jurisdiction. *See id.* § 26.043. Those jurisdictional exclusions also apply to statutory county courts unless another statute gives broader jurisdiction to a particular statutory county court. *See Thielemann v. Kethan*, 371 S.W.3d 286, 291–94 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (thoroughly examining statutes and case law); *cf. Contemp. Contractors, Inc. v. Centerpoint Apt. Ltd. P/S*, No. 05-13-00614-CV, 2014 WL 3051321, at *4 (Tex. App.—Dallas July 3, 2014, no pet.) (mem. op.) ("If a specific statutory provision confers jurisdiction [on a statutory county court], the specific provision controls over the general limitation of section 26.043."); *Chambers v. Pruitt*, 241 S.W.3d 679, 684 (Tex. App.—Dallas 2007, no pet.) (implying that section 26.043 applied to Kaufman County's county court at law). There is no statutory grant of broader jurisdiction to Collin County's county courts at law, so the section 26.043 jurisdictional exclusions apply in this case. *Kelly v. Isaac*, No. 05-19-00813-CV, 2020 WL 4746589, at *3 (Tex. App.—Dallas Aug. 17, 2020, pets. denied) (mem. op.).

In *Kelly*, this Court held that section 26.043(2) encompassed claims asserted by homeowners to invalidate a lien on their property filed by a contractor. *Kelly*,

–50–

2020 WL 4746589, at *4–5. As a result, we concluded the trial court lacked jurisdiction to adjudicate the homeowners' claims to invalidate the lien. *Id.* Applying *Kelly* here, we conclude the trial court lacked jurisdiction to adjudicate the Heflins' lien-related claims and to award attorney's fees to the Heflins regarding those claims. *See id.* (citing *Tex. Dep't of Pub. Safety v. Salazar*, No. 03-11-00478-CV, 2013 WL 5878905, at *12 & n.9 (Tex. App.—Austin Oct. 31, 2013, pet. denied) (mem. op.)). We, therefore, sustain Roofmasters and Hizar's eighth and ninth issues, reverse and vacate the trial court's September 11, 2020 order to remove invalid lien, including the award of attorney's fees to the Heflins, and dismiss those claims for lack of jurisdiction. *See id.* at *5.

## CONCLUSION

For the foregoing reasons, we overrule Roofmasters and Hizar's first, second, third, fourth, sixth, and seventh issues, and sustain their fifth, eighth, and ninth issues. Accordingly, we reverse the awards of conditional post-trial and appellate attorney's fees and vacate the portion of the September 14, 2021 order awarding the Heflins $5,000 in fees for prevailing on Roofmasters and Hizar's motion for new trial and remand for a redetermination of attorney's fees to be awarded to the Heflins for fees incurred post-trial and on appeal. We also reverse and vacate the trial court's September 11, 2020 order to remove invalid lien and reverse the award of attorney's fees related to the lien removal proceedings.

We affirm the remainder of the judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

210936F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

| | |
|---|---|
| WILLIS ALAN HIZAR AND ROOFMASTERS DFW, LLC, Appellants | On Appeal from the County Court at Law No. 7, Collin County, Texas Trial Court Cause No. 007-01345-2020. |
| No. 05-21-00936-CV    V. | Opinion delivered by Justice Partida-Kipness. Justices Nowell and Wright participating. |
| KENNETH HEFLIN AND ANNA HEFLIN, Appellees | |

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** that portion of the trial court's judgment that awards conditional post-trial and appellate attorney's fees to Appellees, **VACATE** the portion of the trial court's September 14, 2021 order that awards Appellees $5,000 in fees for prevailing on Appellants' motion for new trial, and **REMAND** for a redetermination of attorney's fees to be awarded to Appellees for reasonable and necessary fees incurred post-trial and on appeal.

We also **REVERSE AND VACATE** the trial court's September 11, 2020 Order to Remove Invalid Lien.

We **AFFIRM** the remainder of the judgment as modified.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 10th day of July 2023.